# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-00040-SCT

*MERRIMACK MUTUAL FIRE INSURANCE COMPANY*

*v.*

*LINDA KAY MCDILL*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/92 |
| TRIAL JUDGE: | HON. JOHN B. TONEY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHARLES R. WILBANKS, JR. |
| | DAN M. MCDANIEL, JR. |
| ATTORNEYS FOR APPELLEE: | MARK C. BAKER |
| | WILBURN HYCHE |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 5/16/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/6/96 |

**EN BANC.**

**DAN M. LEE, CHIEF JUSTICE, FOR THE COURT:**

¶1. The Appellee, Linda Kay McDill ("McDill"), who resided in Pearl, Mississippi, was seriously injured by Charlie E. Brown, Jr., a former boyfriend who resided in Brandon, Mississippi, when he entered her Pearl apartment and shot her in January of 1991. McDill's current boyfriend and fiancé, Joe Wilkerson, was also shot and fatally wounded during the same incident. McDill filed a civil tort action against Brown, seeking damages for the injuries she received as a result of Brown's actions. Merrimack Mutual Fire Insurance Company ("Merrimack"), after notification by Brown's parents of the action against Brown, declined to provide Brown a defense in the civil action, basing its decision on the ground that Brown was not an "insured" under the Brown's homeowner's policy at the time of the incident.

¶2. Brown was charged criminally with several counts including murder, burglary, and two counts of aggravated assault. Subsequent to McDill filing her civil Complaint, Brown entered a plea of guilty to the murder and burglary charges. Before any issues in the civil action were litigated, an Agreed Judgment against Brown in the amount of One Hundred Thousand Dollars ($100,000.00) was entered based on an agreement between McDill and Brown.

¶3. A Writ of Garnishment was filed by McDill against Merrimack, who filed an Answer denying liability.

Written discovery was propounded and cross-motions for summary judgment were filed on the issue of Brown's coverage as a member of the "insured's household" under his parents' insurance policy. The lower court granted a partial summary judgment in which the court determined that Brown was a member of his parents' household and thus an "insured" of Merrimack.

¶4. Subsequent to the granting of this partial summary judgment, the lower court granted summary judgment in favor of McDill holding that Merrimack's failure to provide a defense in the underlying tort action rendered it liable for the amount of the Agreed Judgment and precluded Merrimack from litigating any exclusions Merrimack may have found applicable.

¶5. It is from the grant of these summary judgments that Merrimack now appeals. Merrimack raises the following issues in this appeal:

**I. THE TRIAL COURT ERRED IN ENTERING ITS PARTIAL SUMMARY JUDGMENT HOLDING THAT CHARLIE E. BROWN, JR., DEFENDANT IN THE LOWER COURT, WAS AN INSURED UNDER THE HOMEOWNER'S POLICY ISSUED BY MERRIMACK MUTUAL FIRE INSURANCE COMPANY,**

**II. THE TRIAL COURT ERRED IN ENTERING ITS SUMMARY JUDGMENT HOLDING THAT MERRIMACK MUTUAL FIRE INSURANCE COMPANY'S FAILURE TO PROVIDE A DEFENSE ON BEHALF OF CHARLIE E. BROWN, JR. IN THE UNDERLYING TORT ACTION PRECLUDED MERRIMACK MUTUAL FIRE INSURANCE COMPANY FROM ASSERTING THE INTENTIONAL ACT EXCLUSION UNDER ITS POLICY AS A DEFENSE IN THE GARNISHMENT ACTION, AND**

**III. THE TRIAL COURT ERRED IN DENYING MERRIMACK MUTUAL FIRE INSURANCE COMPANY'S MOTION TO DISMISS WHICH WAS BASED ON PLAINTIFF/APPELLEE'S FAILURE TO TIMELY FILE A MOTION TO CONTEST MERRIMACK MUTUAL FIRE INSURANCE COMPANY'S ANSWER TO WRIT OF GARNISHMENT.**

## STATEMENT OF THE CASE

¶6. On January 3, 1991, Brown, armed with a rifle, went to the apartment of McDill, whom he had known since 1986. McDill resided in Pearl, Mississippi. From outside the apartment, Brown fired a shot through a window into the apartment, striking and killing Joseph Wilkerson, McDill's fiancé. Brown then forcibly entered the apartment and fired at least one shot causing injury to McDill, specifically traumatically amputating her left arm below the elbow.

¶7. As a result of the shooting, Brown was indicted on March 12, 1991, by a Rankin County Grand Jury on four separate felony counts including murder, burglary of an occupied dwelling and aggravated assault. On March 29, 1991, McDill filed her civil Complaint against Brown, seeking damages in excess of One Hundred Thousand Dollars ($100,000.00), alleging that she suffered injuries which were the direct result of Brown's negligence and his total disregard for the safety and well-being of McDill.

¶8. At the time of the incident, Brown and his parents lived in Brandon, Mississippi. Brown's parents were insured under a homeowner's policy No. MHP 138-61-83, issued by Merrimack, with a policy period of November 30, 1989 to November 30, 1992. Brown's parents provided a copy of the Summons and

Complaint to Merrimack and requested that a defense be afforded to their son under the terms of their homeowner's policy. Merrimack denied the defense and indemnification on the ground that Brown was not an "insured" under the terms of the Brown's homeowner's policy. Brown's parents retained their own private counsel to defend their son in the civil action.

¶9. Subsequently, on June 21, 1991, Brown pled guilty to the murder and burglary charges and was sentenced on July 2, 1991, to serve a life term and a term of fifteen years respectively for these crimes. Before any of the issues in the civil case were litigated, Brown and McDill entered into an Agreed Judgment on July 23, 1991. Brown agreed to the entry of a judgment against him in favor of McDill in the amount of One Hundred Thousand Dollars ($100,000.00).[1]

¶10. Based on the Agreed Judgment and the terms of Brown's homeowner's policy, McDill filed a Writ of Garnishment against Merrimack on July 25, 1991. Merrimack answered, denying any obligation to McDill for Brown' actions, contending that Brown was not an "insured" under the subject policy and that Brown's acts were not covered by said policy.

¶11. Discovery was propounded by McDill and McDill eventually filed a Motion to Contest Merrimack's Answer to the Writ of Garnishment. Merrimack filed a Motion for Protective Order and a Motion to Dismiss, alleging that McDill did not timely file her Motion to Contest and therefore, it was procedurally barred. Both of Merrimack's motions were denied by order of the lower court.

¶12. Discovery was propounded by Merrimack to McDill and, as a result of McDill's failure to answer questions regarding the "intentional nature of the shooting incident", Merrimack filed a Motion to Compel Answers to Written Discovery. This Motion was held in abeyance by the lower court and limited depositions were permitted on the issue of Brown's coverage under his parents' homeowner's policy.

¶13. Subsequent to the taking of depositions, cross-motions were filed by the parties on the issue of whether Brown was a member of the insureds' (his parents') household. The lower court entered a Memorandum Opinion and Order granting partial summary judgment in favor of McDill, finding that Brown was an "insured" under the subject policy. McDill then filed an additional Motion for Summary Judgment on the remaining issues, Merrimack's refusal to defend and their resulting liability for the amount of the Agreed Judgment.

¶14. Without ruling on Merrimack's Motion to Compel, which sought responses from McDill relative to the issue of the intentional nature of Brown's actions, the lower court granted summary judgment in favor of McDill. In the court's Memorandum Opinion, Order and Judgment, the lower court held that Merrimack's failure to provide Brown a defense in the underlying tort action rendered it liable for the amount of the Agreed Judgment and precluded Merrimack from litigating the intentional nature of Brown's actions. In addition, the lower court entered judgment in favor of McDill against Merrimack in the amount of One Hundred Thousand Dollars ($100,000.00). Thereafter, Merrimack timely filed its notice of appeal.

## STANDARD OF REVIEW

¶15. Rule 56(c) of the Mississippi Rules of Civil Procedure allows summary judgment where there are no genuine issues of material fact. To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under this Rule. *Lyle v. Miadinich*, 584 So. 2d 397, 398 (Miss. 1991).

¶16. This Court will review *de novo* a decision to grant summary judgment. *Short v. Columbus Rubber & Gasket Co.*, 535 So. 2d 61, 63 (Miss. 1988). Evidentiary matters are viewed in the light most favorable to the non-moving party. *Palmer v. Biloxi Regional Medical Center, Inc.*, 564 So. 2d 1346, 1354 (Miss. 1990). If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. *Brown v. Credit Center, Inc.*, 444 So. 2d 358, 362 (Miss. 1983).

## DISCUSSION OF THE LAW

¶17. This Court holds that this case must be reversed and remanded for a jury trial on the issue of Brown's "household resident" status. In so doing, we find only the following assignment of error to merit a full discussion by the Court.

## ASSIGNMENT OF ERROR NO. 1

**I. THE TRIAL COURT ERRED IN ENTERING ITS PARTIAL SUMMARY JUDGMENT HOLDING THAT CHARLIE E. BROWN, JR., DEFENDANT IN THE LOWER COURT, WAS AN INSURED UNDER THE HOMEOWNER'S POLICY ISSUED BY MERRIMACK MUTUAL FIRE INSURANCE COMPANY**

¶18. Merrimack argues that the lower court erred in granting partial summary judgment in favor of McDill. Merrimack asserts that the determination of Brown's "household resident" status should have been made by a jury because there were numerous material facts at issue. McDill argues that the issue was thoroughly briefed before the trial court and that the trial court had before it all evidence relative to the same, including but not limited to the depositions of Brown and his parents.

¶19. Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). Therefore, the summary judgment will be affirmed only if this Court is convinced, after an independent review of the record, that "there is no genuine issue as to any material fact" and that "the movant is entitled to judgment as a matter of law."

¶20. We begin review with the language of the policy. Brown's parents were insured under a homeowner's policy No. MHP 138-61-83, issued by Merrimack, with a policy period of November 30, 1989 to November 30, 1992.

¶21. The "definitions" section of the policy states:

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. . . .

3. "Insured" means you and residents of your household who are:

a. your relatives; or

b. Other persons under the age of 21 and in the care of any person named above.

¶22. An examination of the record evidences substantial documentary and testimonial evidence, often in

conflict, presenting numerous disputed material facts, which, in the opinion of this Court, should have been resolved by a jury.

¶23. Merrimack contends that Brown, at 28 years of age and completely emancipated, was not a member of his parents' household at the time of the incident and therefore was not covered under the policy issued by Merrimack to the insureds. Prior to the time of this incident, Brown had resided away from his parents' home on several occasions for various periods of time. At the time of the subject incident, Brown was living in a furnished apartment located over a garage in a separate structure located on his parents' property in Brandon, Mississippi. The apartment consisted of a living room, kitchen-dining room combination, two bedrooms and bath. It contained a refrigerator, stove and microwave. Although not complete at the time, it was livable and provided Brown the privacy he desired. Mrs. Brown testified that it was Brown's home. Brown was employed and as a result of his employment spent the weekdays working out of town, coming home on weekends.

¶24. McDill, citing *Bearden v. Rucker*, 437 So. 2d 116 (La. 1983), contends that the question of whether Brown was a resident of his parents' household at the time of the incident is not dependent on their living under the same roof, but is a matter of intention and choice rather than location. The key in determining the intent of the parties is whether they created and maintained a household, and not the existence of a contiguous roof. From the testimony of Brown's father, his son was living in the "upstairs" which was an area over the garage of his parents' house. It was initially designed as a place for an elderly relative to live if they so desired. The reasons Brown moved into the upstairs apartment were (1) to enable his father to move his office into the house, thereby putting less stress on his back; and (2) to give Brown a little more privacy and space. Brown received his mail at his parents' address and ate many meals with his parents in their home. Further, Brown was under specific guidelines while residing in the apartment.

¶25. This Court has never directly addressed the issue of whether a person living in physically separate living quarters on the insured's premises is considered a member of the insured's household under a homeowner's policy. The United States Court of Appeals for the Fifth Circuit recently addressed the meaning of the phrase "resident of the insureds' household" in the case of *Cicciarella v. Amica Mutual Ins. Co.*, 66 F.3d 764 (5th Cir. 1995). The court noted that

> the term "household" is not defined within the four corners of the Policy; neither is household truly a legal term of art. Rather, it is a term of ordinary, conversational usage and understanding. Random House defines "household" as "the people of the house collectively; a family, including its servants." The Random House College Dictionary, (rev. ed. 1982). Webster defines "household" as "[t]hose who dwell under the same roof and compose a family: a domestic establishment: a social unit comprised of [sic] those living together in the same dwelling place." Webster's Third New International Dictionary of the English Language, (unabridged 1986). . . . Thus a "household" is not a place--not a house or a building or a residence--but is group or set of individuals, i.e., natural persons, who together dwell "under the same roof."

*Cicciarella*, 66 F.3d at 768-69. Even though Black's contains annotations within its definition of "household," that definition essentially parrots Webster.[2]

¶26. Significant to the case *sub judice* is whether it can be said with certainty that, as used in the Merrimack policy, "household" can mean any household or only the primary household, principal household, permanent household, or household for the greatest or greater part of the year. As the subject

policy is without any adjective or phrase modifying "household," the answer to that question is not apparent from the document. What is apparent, however, is that "in the policy, 'household' is susceptible of more than one interpretation-- indeed, multiple interpretations. This is quintessential ambiguity and thus a quintessential factual question for resolution by the jury." *Cicciarella*, 66 F.3d at 769.

¶27. The Court of Appeals of the State of Washington, interpreting the automobile insurance policy phrase, "while residents of the same household", provides us some guidance. "The phrase 'residents of the same household' has no fixed meaning but varies according to the circumstances of the case." *Pierce v. Aetna Casualty & Surety Company*, 627 P.2d 152 (Wash. 1981) (quoting *American Universal Ins. Co. v. Thompson*, 384 P.2d 367 (Wash. 1963); *Cal-Farm Ins. Co. v. Boisseranc*, 312 P.2d 401 (Cal. 1957)). "In general terms, dictionaries define 'resident' as one who dwells or has an abode in a place for a continued length of time and 'household' as those who dwell under the same roof to compose a family living together." *Consumers United Ins. Co. v. Johnson*, 614 P.2d 657 (Wash. 1980).

¶28. In *Wright v. Allstate Indemnity Co.*, this Court reversed and remanded a lower court's grant of summary judgment in favor of the insurer, determining that it had no liability and owed no duty to defend insured's son in a wrongful death action. *Wright v. Allstate Indemnity Co.,* 618 So. 2d 1296 (Miss. 1993). Finding the existence of material issues of fact, this Court held that the grant of summary judgment was premature. *Id.* at 1300.

> The first question that must be answered to resolve this dispute is whether there was an Allstate insurance policy in effect at the time of the shooting that covered either James Wright or Billy Ross Wright. This question can only be answered by resolving the disputed contentions of the parties. Accordingly, the grant of summary judgment was premature.

*Id.* (Emphasis added).

¶29. Justice Banks, in a concurring opinion joined by Justices Prather and Sullivan, wrote

> [i]n order to be an insured Billy Ross would have to be a member of James Wright's household under the terms of the policy. The question of whether he was is a matter to be determined by the fact-finder in view of the intent of the parties at the time that the policy was contracted.

*Id.* at 1303 (emphasis added).

¶30. It is the opinion of this Court that the case *sub judice* is inundated with disputed facts, material in nature, which should have been resolved by a jury. The lower court erred in granting partial summary in favor of McDill, and not submitting the issue of Brown's "household resident" status to fact finders. We therefore remand this matter for a determination of Brown's "household resident" status.

**¶31. REVERSED AND REMANDED FOR JURY TRIAL ON "HOUSEHOLD RESIDENT" STATUS.**

**PRATHER, P.J., PITTMAN, ROBERTS AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND BANKS, J. SMITH, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶32. Merrimack failed to dispute or present any facts subject to dispute when the parties' motions for summary judgment were considered. Therefore, the circuit court correctly found that Charlie Brown was a member of his parents' household and thus, an insured under their policy with the Merrimack Mutual Fire Insurance Company. The mere alteration of a family's sleeping arrangements does not make a member of that family any less a resident of the household. Because I disagree with the majority's findings to the contrary as well as with its contention that there are controverted facts to be resolved by a jury, I respectfully dissent.

¶33. The Browns' "residence premises," located at 18 Marseilles Street in Brandon, Mississippi, was covered by an insurance policy issued by the Merrimack Mutual Fire Insurance Company. Merrimack refused to defend Charlie Brown in a civil tort action against him on grounds that he was not a member of his parents' household. The insurer advised the Browns that "[a]s Charles Edward Brown, the defendant in this Summons, was not a resident of your household, but lived in another structure in an apartment on your premises, he would not be an insured under Homeowners Policy MHP 138-61-83." Merrimack, however, does not refute that Charlie was a resident of the 18 Marseilles Street premises.

¶34. Merrimack's position is contrary to the definitions set forth in its policy issued to the Browns. That policy defined the "insured" as "you and residents of your household who are: a. your relatives; or b. other persons under the age of 21 and in the care of any person named above." Further, the policy, which covered both the primary dwelling and other structures, defined the "insured location" as "residence premises," which, in turn, was defined as **"a. the one family dwelling, other structures, and grounds; or b. that part of any other building; where you reside and which is shown as the 'residence premises' in the Declaration."** Charlie, without question, by the very language of the Merrimack policy, is a relative of the Browns and lived on the residence premises.

¶35. Charlie, the Brown's son, lived with his parents at 18 Marseilles Street in Brandon. It is undisputed that he was living in an unfinished apartment built above the garage of his parents' home. The garage was part of the main residence where Charlie's parents parked their cars. While the garage was separate from the house, the record indicates that there were plans to join the two structures. However, as the majority recognizes, the key in determining whether Brown was a resident of his parent's household at the time is "not the existence of a contiguous roof," but a matter of choice and intent: that is, whether the parties had created and maintained a household. Maj. op. at 8. That said, the majority makes an issue of whether a family member living in a "separate dwelling" on the insured's premises is a member of the insured's household. It further finds ambiguities in the policy's use of the unmodified term "household," e.g., permanent household, seasonal household, etc., but ignores the express note on the policy's declaration page that "(a) The **residence premises** is not seasonal; (b) no **business** pursuits are conducted on the **residence premises**; (c) the **residence premises** is the only premises where you maintain a residence other than business or farm properties; (d) the **insured** has no full time **residence employee(s)**; (e) the insured has no outboard motor(s) or watercraft otherwise excluded under this policy for which coverage is desired." (emphasis in original).

¶36. The authorities cited by the majority emphasize that the term "household," as used in the context of a homeowner's insurance policy, is synonymous with "family." ***Cicciarella v. Amica Mutual Insurance***

*Co.*, 66 F.3d 764, 768-769 (5th Cir.1995). There is substantial undisputed evidence in the record that Charlie was a member of his parents' household or family and not a member of any other household or family. He had lived with his parents on and off since high school and had no plans to go elsewhere. His mail was delivered to 18 Marseilles Street. He had no other residence. His move from a bedroom in the house to the garage apartment was made, in part, to accommodate his father's back problems. Charlie often worked out of town during the week, but ate meals with his family when he was at home. In fact, although the garage apartment was equipped with kitchen facilities, the appliances purchased for it had not been installed at the time of the incident.

¶37. In ***Johnson v. Preferred Risk Automobile Insurance Co.***, 659 So.2d 866 (Miss.1995), which overruled ***Goens v. Arinder***, 248 Miss. 806, 161 So.2d 509 (1964), we found that married college students, living separately in their respective parents' homes for the summer, were "residents" of those households at the time they were injured in an accident caused by an uninsured motorist, and therefore were "family members" entitled to coverage under their parents' insurance policies. In ***Johnson***, interpreting who is a "resident" under the UM statute and on the insurance policy in question, we recognized that:

> "Resident" has no technical or fixed meaning; the term is "flexible, elastic, slippery, and somewhat ambiguous." 77 C.J.S. Resident at 305 (1952). The term "has an evasive way about it, with as many colors as Joseph's coat." ***Weible v. United States***, 244 F.2d 158, 163 (9th Cir.1957), cited in ***Government Emp. Ins. Co. v. Dennis***, 645 P.2d 672, 674 (Utah 1982).

***Johnson***, 659 So.2d at 866. The ***Johnson*** Court explained that the two factors most often considered in the definition of "resident" are presence and the intent to remain for some time. ***Id.*** Without a doubt, Charlie had a presence in his parents' household; it was the only place where he kept his things and where he regularly lived and ate. Moreover, he had no intent to move elsewhere.

¶38. This case is distinguishable from ***Wright v. Allstate Indemnity Co.***, 618 So.2d 1296 (Miss.1993), where the issue was whether Billy Ross Wright was an insured under a homeowner's policy issued in his parents' name, but which covered the residence where he, his girlfriend and their children lived, but which his parents had never occupied or intended to occupy. There, we found that disputed issues of fact existed regarding representations made by the senior Wrights to the insurance agent about ownership of the insured premises. To the contrary, if there are any disputed issues of fact in the case sub judice, the majority has failed to bring them to our attention.

¶39. Because Charlie is, by the very language of the insurance policy, an insured resident of his parents' household, consistent with this Court's definitions of household and residence, the circuit court's decision should be affirmed. Furthermore, since there were no disputed factual issues, summary judgment was proper.

¶40. **SULLIVAN, P.J., AND BANKS, J., JOIN THIS OPINION.**

1. It is worth noting that this is the exact amount of the maximum liability coverage provided under Brown's parents' homeowner's policy.

2. The following entry appears in Black's Law Dictionary for the term "household": adj. Belonging to the house and family; domestic. n. A family living together. *Schurler v. Industrial Commission*, 86 Utah 284, 43 P.2d 696, 699 (1935). Those who dwell under the same roof and compose a family. Term "household"

is generally synonymous with "family" for insurance purposes, and includes those who dwell together as a family under the same roof. *Van Overbeke v. State Farm Mut. Auto. Ins. Co.*, 303 Minn. 387, 227 N.W.2d 807, 810 (1975). Generally, the term "household" as used in automobile policies is synonymous with "home" and "family." *Bartholet v. Berkness*, 291 Minn. 123, 189 N.W.2d 410, 412 (1971). Black's Law Dictionary 740 (6th ed. 1994).