## SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellant,

v.

## Kenneth C. KIMBALL et al., Appellees.

### No. 5706.

Court of Civil Appeals of Texas, Waco.

May 26, 1977.

Rehearing Denied June 16, 1977.

Sherwin A. Winniford, Haley, Fulbright, Winniford & Bice, Waco, for appellant.

G. Stanley Rentz, Waco, for appellees.

HALL, Justice.

Appellee Kenneth C. Kimball (Kenneth) is the named insured in a family automobile policy issued by appellant, Southern Farm Bureau Casualty Insurance Company. Kenneth's wife, Connie, was killed in an automobile accident with an uninsured motorist when the policy was in force. At the time of her death, she and Kenneth were separated, living in separate residences, and a divorce action filed by her was pending. Appellant brought suit seeking a declaratory judgment as to its responsibilities under the policy for uninsured motorist protection

benefits, personal injury protection benefits, and death indemnity benefits. Appellant's suit was consolidated for trial with another brought by appellees for these benefits. On the trial, under stipulated facts, the only issue raised by the parties was whether Connie and Kenneth were "residents of the same household," as that term is used in the policy, at the time of Connie's death. Appellant contended she was not, but it conceded that if she was then it was liable for the benefits in question.

Trial was to a jury. It was asked the single question, "Do you find from a preponderance of the evidence that at the time of the accident in question, Connie Kay Kimball was a resident of the same household as Kenneth Kimball?" The jury was instructed that "by the term 'resident of the same household' is meant: (A) by the term 'resident' [is meant] a member of the same family; and (B) by the term 'household' is meant persons who dwell together as a family." The jury answered the question, "She was a resident of the same household." Judgment was rendered on the verdict in favor of appellees.

It is appellant's contention that the evidence is legally and factually insufficient to support the jury's finding. Particularly, appellant argues that under the court's definitions parties must not only be members of the same family but must also "dwell together under the same roof" in order to be residents of the same household; and that the undisputed proof that Kenneth and Connie were separated and living in separate residences establishes as a matter of law that they were not residents of the same household. We overrule these contentions and affirm the judgment.

■ The controlling test of whether persons are residents of the same household at a particular time, within the meaning of the policy in question, is not *solely* whether they are then residing together under one roof. The real test is whether the absence of the party of interest from the household of the alleged insured is intended to be permanent or only temporary—i. e., whether there is physical absence coupled with an intent not to return. In *American States Ins. Co. v. Walker,* 26 Utah 2d 161, 486 P.2d 1042, 1044 (1971), the court said that the residence in question "emphasizes membership in a group rather than an attachment to a building"; and that it is "a matter of intention and choice" rather than one of location. Under proper facts, it has been held that separations from the common roof by college students, by members of the military services, and by spouses (albeit with divorce actions pending) did not, per se, destroy their household membership with their families and spouses. See, *Crossett v. St. Louis Fire And Marine Ins. Co.,* 289 Ala. 598, 269 So.2d 869 (1972); *Manuel v. American Employers Insurance Company,* 228 So. 321 (La.App., 1939); *Giese v. Karstedt,* 30 Wis.2d 630, 141 N.W.2d 886 (1966); *Allstate Ins. Co. v. Jahrling,* 12 N.Y.2d 943, 238 N.Y.S.2d 517, 188 N.E.2d 791 (1963); *Doern v. Crawford,* 36 Wis.2d 470, 153 N.W.2d 581 (1967); *American Casualty Co. v. Harleysville Insurance,* 238 Md. 322, 208 A.2d 597 (1965); *Lumbermen's Mut. Cas. Co. v. Continental Cas. Co.,* 387 P.2d 104 (Alaska Sup., 1963). Related annotations are found in 173 A.L.R. 901, 1 A.L.R.2d 557, 78 A.L.R.2d 1395, and 46 A.L.R.3rd 1024.

Three Texas cases cited by appellant which deal with spouses living in separate residences are *Firemen's Insurance Company of Newark, New Jersey v. Burch,* 426 S.W.2d 306 (Tex.Civ.App.—Austin, 1968[1]); *Boon v. Premier Insurance Company,* 519 S.W.2d 703 (Tex.Civ.App.—Texarkana, 1975, no writ), and *Cunningham v. Members Mutual Ins. Co.,* 456 S.W.2d 216 (Tex.Civ. App.—Fort Worth, 1970, no writ). In *Burch* and *Boon* divorce actions were pending and there was also direct testimony by a spouse, corroborated by other proof, that the separation was permanent. Findings in both cases that the spouses were not residents of the same household were held sup-

1. This case has a writ history at 442 S.W.2d 331 (Tex.Sup., 1969), but no complaint was raised there on the question before us.

ported by proof on appeal. The appellate courts emphasized the proof supporting the findings, concluded fact questions were raised, and refused to hold that the spouses were, as a matter of law, residents of the same household. In *Boon,* the court pointed to "cases with similar fact situations in which the trier of facts concluded that the wife was a resident of the same household, [and] the appellate courts have affirmed the lower court judgments." In *Cunningham,* (a venue case), the court emphasized the fact of the spouses' separation in leaving intact a finding that they were not residents of the same household, but stated that they were "in an identical position" as the parties in *Burch,* and based its ruling on the holding in *Burch.* If, as appellant says, *Cunningham* stands for the proposition that the "one roof, dwelling together" test is solely controlling, then we would not follow it.

The remaining case cited by appellant is *Travelers Indemnity Co. v. American Indemnity Co.,* 315 S.W.2d 677 (Tex.Civ.App., 1958, no writ). There, the court held the proof supported a jury finding that a 34-year-old son who had been living and working 50 miles distant from his parents' home, but who had indicated an intention to return to his parents' home and was presumably on his way there with some clothes at the time of the accident, was not a resident of his father's household.

In our case, Kenneth and Connie, a couple in their 20's, were married in May, 1972. Their only child, a daughter, was born in September, 1973. Connie was killed on December 21, 1975. Before their separation, they resided in their mobile home in the City of Waco. Early in their marriage, they suffered substantial financial losses in the construction business. Thereafter, during the last two years of their marriage, Kenneth was a "long haul" truckdriver, based in Waco. He would be on the road three and four weeks at a time, with no longer than three days at home between trips. Sometimes he would get in at night and leave the next morning. On the trips, he virtually lived in his truck. It was ar-ranged with his employer that Connie could draw on his earnings and pick up his paychecks. She cashed the checks, bought the family needs, and paid the bills, including payments on the mobile home and several department store accounts she maintained. Connie also held a job. During the day, she left their child with her mother who lives in the City of Lacy-Lakeview, near Waco. After work when Kenneth was gone, Connie would go home, clean up, carry her work clothes for the next day to her mother's house, and she and the child would spend the night there. Connie filed suit for divorce on November 5, 1975. Later, she separated from Kenneth and moved into her mother's house, taking all of her work clothes. After the separation, Connie still kept most of her things in the trailer home. One week before her death, Connie rented an apartment in the City of Bellmead, near Waco, and moved all of her belongings into it. She left a set of dishes in the mobile home for Kenneth. The divorce suit and the separation were precipitated by emotional stress suffered by Connie which was caused by Kenneth's long absences from home and by the dunning of creditors of their defunct construction business. During the separation, Connie would either meet Kenneth at the truck depot in Waco when he returned from a trip, or she would have their car there for his use and he would go to her. They would go out together for supper when he was home, and would visit into the evening with each other and other trucker-couples at local night spots. Neither was romantically interested in another person. They continued with the arrangement for Connie drawing on his pay, cashing his checks, using the money as she saw fit, including her needs and those of the child, and paying the bills. He talked with her several times about a reconciliation, but she had not agreed to it at the time of her death. On December 5, 1975, Kenneth returned home to attend his father's funeral. That night, he and Connie slept together in a room in his mother's house. Their child was with them. On December 20th, the night before Connie died, she fixed supper for Kenneth in her

apartment. Their daughter was with them. They discussed plans for the child's Christmas. Kenneth had arranged his schedule to be home on Christmas.

The evidence we have recited supports a determination by the jury that the separation of Kenneth and Connie was not irrevocably permanent at the time of Connie's death. It is legally sufficient to support the finding that they were then residents of the same household. A review of the whole record convinces us that the finding is not against the great weight and preponderance of the evidence.

The judgment is affirmed.