United States Court of Appeals,

Fifth Circuit.

No. 95-40055

Summary Calendar.

Lillian CICCIARELLA;  James F. Halloran;  Vickey C. Halloran, M.D., Plaintiffs-Appellants,

v.

AMICA MUTUAL INSURANCE COMPANY, Defendant-Appellee.

Oct. 17, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before DUHÉ, WIENER and STEWART, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Lillian Cicciarella and others brought this suit in federal district court at Houston, Texas, against Defendant-Appellee Amica Mutual Insurance Company (Amica), alleging, inter alia, breach of contract for Amica's refusal to pay uninsured/underinsured motorist benefits. Amica moved for partial summary judgment, arguing that, as a matter of law, Cicciarella was not a "covered person" under the policy in question.  The district court concluded that no genuine issues of material fact existed and that, as a matter of law, Cicciarella was not a "covered person" under the policy.  On appeal, Cicciarella urges that genuine issues of material fact exist, making summary judgment inappropriate.  As we agree with Cicciarella, we reverse and remand.

I

FACTS AND PROCEEDINGS

A. *The Dwellings*

Doctor and Mr. Halloran own a single-family dwelling[1] in Houston, Texas, in which they spend a majority of their time each year (Houston Dwelling).  The Hallorans also own a single-family dwelling in Brooklyn, New York (Brooklyn Dwelling) in which Cicciarella, Dr. Halloran's mother,

---

[1] We use the descriptive and non-legal term "dwelling" to avoid any confusion with the contractual terms at issue in this case, such as "residence" and "household."

lives year-round. For the past 16 years, the Hallorans have spent a total of approximately 60 days a year in the Brooklyn Dwelling. Thus, the Hallorans and Cicciarella spend about 60 days a year under the same roof.

Both the Hallorans and Cicciarella have their own separate rooms in the Brooklyn Dwelling. The Hallorans maintain year-round wardrobes at the Brooklyn Dwelling, pay all utility bills and repair costs for the Brooklyn Dwelling, and support Cicciarella financially: She pays no rent and is, for federal income tax purposes, a dependent of the Hallorans. When the Hallorans are not in Brooklyn, Dr. Halloran speaks with Cicciarella by telephone one to three times each day.

B. *The Accident*

On September 1, 1991, Amica re-issued a policy of automobile insurance (Policy) to the Hallorans. On April 11, 1992, the Hallorans traveled to Brooklyn to attend a medical seminar. On the following day—while the Policy was still in full force and effect, with all premiums thereon paid in full—the Hallorans and Cicciarella were injured in an automobile accident: The rental car in which they were riding was st ruck by a vehicle driven by Karl Healy. The collision was the direct and proximate result of Healy's negligence; however, he was underinsured. Cicciarella and the Hallorans filed claims with Amica under the Policy's uninsured/underinsured motorist coverage, but Amica withheld payment.

C. *District Court Proceedings*

Cicciarella and the Hallorans filed this suit, alleging causes of action for breach of contract, breach of the duties of good faith and fair dealing, and violation of Article 21.21 of the Texas Insurance Code. Cicciarella and the Hallorans sought to recover $100,000 in actual damages plus exemplary damages and attorneys' fees.

Amica entered into a complete settlement with the Hallorans. Even though Cicciarella stipulated and agreed to its terms, the Hallorans' settlement in no way affected her claims or causes of action against Amica. Thereafter, Cicciarella and Amica both moved to sever the extra-contractual claims for bad faith and vio lations of the Texas Insurance Code from the remaining uninsured/underinsured motorist claim. The district court ordered such severance, leaving Cicciarella

and Amica as the only parties to the severed contractual damage claim under the Policy. Amica then moved for partial summary judgment, seeking dismissal of Cicciarella's underinsured motorist claim and alleging that, as a matter of law, Amica was entitled to judgment because the undisputed facts established that Cicciarella was not a "resident of [the insureds'] household" and thus not a "covered person" under the Policy. The district court agreed with Amica, holding that no genuine issue of fact existed to preclude summary judgment because—as a matter of law—Cicciarella was not a resident of the same household as the Hallorans, the named insureds. The district court granted partial summary judgment in favor of Amica, dismissing Cicciarella's uninsured motorist claim. Cicciarella timely filed a notice of appeal.[2]

D. *The Issue on Appeal*

As she did in district court, Cicciarella insists that genuine issues of material fact as to her residential status vis-a-vis the Hallorans' "household" do exist, thereby precluding summary judgment. Thus, the sole issue on appeal is whether Cicciarella is correct that there exist genuine issues of material fact on the question whether she is a "resident of [the insureds'] household," as that phrase is used in the Policy.

II

ANALYSIS

A. *Standard of Review*

We review a district court's award of summary judgment under the same standards that the district court applied to determine whether summary judgment was appropriate.[3] Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] Therefore, the summary judgment

---

[2]In light of Amica's settlement with the Hallorans on their contractual claim and the district court's severance of the non-contractual claims from Cicciarella's contractual claim, the partial summary judgment dismissing Cicciarella's breach of contract claim was a final judgment for purposes of 28 U.S.C. § 1291, the jurisdictional basis for this appeal.

[3]*Herrera v. Millsap,* 862 F.2d 1157, 1159 (5th Cir.1989).

[4]Fed.R.Civ.P. 56(c).

will be affirmed only if we are "convinced, after an independent review of the record, that "there is no genuine issue as to any material fact' and that "the movant is entitled to judgment as a matter of law.' "[5] We begin our review with the language of the Policy.

B. *The Policy*

The Policy provides in pertinent part:

> [Amica] will pay damages to which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage caused by an accident.

The Policy defines the term, "covered person," as "[the insureds] or any family member." The Policy then defines "family member" as a "person who is a resident of [the insureds'] household and related to [the insured] by blood, marriage or adoption." The words "resident" and "household" are not defined in the Policy; neither are those words modified by adjectives such as "principal," "primary," or the like.

None dispute that, for Cicciarella to *recover* under the Policy, she must prove that (1) she is a relative of Dr. Halloran, and (2) she was a resident of the insureds' (the Hallorans) household at all pertinent times. But merely to avoid summary judgment and "have her day in court," Cicciarella need only raise a material issue of disputed fact with respect to either prong of the Policy's definition of "family member." The first prong presents no problem, as no one contests that Cicciarella and Dr. Halloran are related for purposes of the Policy. Thus the only point of contention is whether Cicciarella was a "resident" of the Hallorans' "household." We examine, in turn, those two terms and how they are used relative to each other in the phrase "resident of [the insureds'] household."

1. *Contractual Construction*

In Texas, insurance policies are controlled by the rules of construction that are applicable to

---

[5]*Herrera v. Millsap,* 862 F.2d at 1159 (5th Cir.1989) (quoting *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.,* 832 F.2d 1358, 1364 (5th Cir.1987) and Fed.R.Civ.P. 56(c)).

contracts generally.[6]  We will not rewrite the terms of the Policy;  instead, we enforce it as written.[7]

Our primary concern is to give effect to the intentions of the parties as expressed in the instrument.[8]

Thus, in interpreting the Policy, we construe all parts of the document together, giving effect to the

intent of the parties.[9]  The determination whether terms are ambiguous is a question of law.[10]  A

contract is ambiguous only "when its meaning is uncertain and doubtful or it is reasonably susceptible

of more than one meaning."[11]  Only if the court makes the determination that the contract cannot be

given a certain and definite legal meaning, and is therefore ambiguous, can a question of *fact* be

submitted to the jury as to the meaning of the contract.[12]  Once the document is found to be

ambiguous, the determination of the parties' intent through extrinsic evidence is a question of fact.[13]

We must interpret and construe insurance policies liberally in favor of the insured, especially when

dealing with exceptions and words of limitation.[14]

2. *Apples and Oranges*

We note preliminarily that some confusion results from the Policy's definition of "family

member" in terms of a "person who is a *resident* of [the insureds'] *household.*"[15]  The word "resident"

embodies the concept of *place,* connoting the physical or geographical location or locale where

individuals dwell or reside.  On the other hand, the word "household" (as distinguished from "house,"

---

[6] *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987).

[7] *Yancey v. Floyd West & Co.,* 755 S.W.2d 914, 918 (Tex.App.—Fort Worth 1988, writ denied).

[8] *Ideal Lease Service, Inc. v. Amoco Prod. Co.,* 662 S.W.2d 951, 953 (Tex.1983).

[9] *Travelers Indem. Co. of Rhode Island v. Lucas,* 678 S.W.2d 732, 734 (Tex.App.—Texarkana 1984, no writ).

[10] *Yancey,* 755 S.W.2d at 917.

[11] *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

[12] *Id.* at 393-94.

[13] *Yancey,* 755 S.W.2d at 917.

[14] *Kelly Associates, Ltd. v. Aetna Cas. & Sur. Co.,* 681 S.W.2d 593, 596 (Tex.1984).

[15] (emphasis added)

"residence," "abode," and the like), is universally defined in terms of *persons*—an agglomeration of individuals who dwell as a unit under one roof. Had the phrase in the Policy read "resident of [the insureds'] *house* (or *residence* or *abode* )," the concepts of place and person would not have been mixed; conversely, had the phrase in the Policy read "person who is a *member of* [the insureds'] household," thus consistently using terms that connote persons rather than mixing persons and places, the point would have been equally clear. As it is, however, we are required to parse the phrase actually used in the Policy and examine more closely the intent of the parties to that insurance contract, which uses "resident" and "household" in the subject phrase, to see if both words as thus used—and the phrase in which the words are used together—are susceptible of but one reasonable meaning and thus are not ambiguous.

3. *Household*

As noted, the term "household" is not defined within the four corners of the Policy; neither is household truly a legal term of art. Rather, it is a term of ordinary, conversational usage and understanding. Random House defines "household" as "the people of the house collectively; a family, including its servants."[16] Webster defines "household" as "[t]hose who dwell under the same roof and compose a family: a domestic establishment: a social unit comprised of [sic] those living together in the same dwelling place."[17] And, even though Black's contains annotations within its definition of "household," that definition essentially parrots Webster.[18] Thus a "household" is not a

---

[16]The Random House College Dictionary, (rev. ed. 1982).

[17]Webster's Third New International Dictionary of the English Language, (unabridged 1986).

[18]The following entry appears in Black's Law Dictionary for the term "household":

> adj. Belonging to the house and family; domestic.

> n. A family living together. *Schurler v. Industrial Commission,* 86 Utah 284, 43 P.2d 696, 699 (1935). Those who dwell under the same roof and compose a family.

> Term "household" is generally synonymous with "family" for insurance purposes, and includes those who dwell together as a family under the same roof. *Van Overbeke v. State Farm Mut. Auto. Ins. Co.,* 303 Minn. 387, 227 N.W.2d 807, 810 (1975). Generally, the term "household" as used in automobile policies is synonymous with "home" and "family." *Bartholet v. Berkness,* 291 Minn. 123, 189 N.W.2d 410, 412 (1971).

*place*—not a house or a *building* or a *residence*—but is group or set of individuals, i.e., natural persons, who together dwell "under the same roof."

Significant to the instant inquiry is whether it can be said with certainty that, as used in the Policy, "household" can mean *any* household or only the *primary* household, *principal* household, *permanent* household, or household *for the greatest or greater part of the year.* As the Policy is devoid of any adjective or phrase modifying "household," the answer to that question is not apparent from the document. What is apparent, however, is that in the Policy, "household" is susceptible of more than one interpretation—indeed, multiple interpretations. This is quintessential ambiguity and thus a quintessential factual question for resolution by the jury.

4. *Resident*

In Texas, "[t]he controlling test of whether persons are residents of the same household at a particular time, within the meaning of the policy in question, is not solely whether they are residing together under one roof."[19] Instead, "[t]he real test is whether the absence of the party of interest from the household of the alleged insured is intended to be permanent or only temporary, i.e., whether there is physical absence coupled with an intent not to return."[20] Moreover, "a person may, and many do, have more than one residence."[21]

Generally, in the cases that establish this test, the inquiry focuses on whether a child or spouse who is not living under the same roof as the insured is, nonetheless, a "resident of the same household" for purposes of the insurance policy.[22] The test focuses on intent of the non-insured

---

Black's Law Dictionary 740 (6th ed. 1994).

[19]*Southern Farm Bureau Casualty Ins. Co. v. Kimball,* 552 S.W.2d 207, 208 (Tex.App.—Waco 1977, writ ref'd n.r.e.).

[20]*Id.*

[21]*Hartford Casualty Insurance Co. v. Phillips,* 575 S.W.2d 62, 64 (Tex.App.—Texarkana 1978, n.w.h.).

[22]*See, e.g., Kimball,* 552 S.W.2d at 209 (affirming jury finding that insured and his wife were residents of the same household despite wife having moved into separate apartment and initiated divorce proceedings); *Phillips,* 575 S.W.2d at 64 (affirming jury finding that son, 14 years of age, was a "resident of the same household" as his mother, the named insured, even though son had been living with his father pursuant to divorce agreement).

person for whom coverage is being sought: whether or not that individual intended his or her departure from the residence of the insured to be permanent or only temporary. If the child or spouse intends to return, the departure is only temporary and the child or spouse remains a "covered person."[23] If, on the other hand, the child or spouse has no intention to return, the departure is permanent and the individual is not a "covered person."[24]

In the instant case, the broader question—whether the individual seeking coverage is a resident of the insureds' household—remains; but the focus has shifted. For here we know where the individual for whom coverage is sought resided: At all pertinent times, Cicciarella was a resident of the Brooklyn dwelling only and never intended to leave. What we do not know is whether at those times the insureds—the Hallorans—were "residents" of the Brooklyn dwelling.

If the Hallorans were *residents* of the Brooklyn dwelling, then Cicciarella was a "resident of [the insureds'] household" and was a "covered person." On the other hand, if the Hallorans were not *residents* of the Brooklyn dwelling but merely periodic visitors or sojourners, they could not have been members of a household in that location. Thus Cicciarella could not have been a "resident of [the insureds'] household" and could not have been a "covered person."

Additionally, as we have seen in the case with the word "household," the word "resident" is not modified by adjective or phrase to give us insight into the question whether the parties intended, for purposes of the Policy, that an insured could be a "resident" of more than one dwelling place and thus a member of more than one "household." The term "resident" has different meanings in the legal world, depending on the context and usage.[25] Here, we are unable to discern from context and usage

---

[23]*See, e.g., National Emblem Insurance Co. v. McClendon,* 481 S.W.2d 186, 189-90 (Tex.App.—Texarkana 1972, writ ref'd n.r.e.) (affirming jury finding that wife, who moved out of husband's house and into her mother's twenty days before auto accident, had only temporarily left her husband's home and thus remained a resident of the same household as her husband).

[24]*See, e.g., Boon v. Premier Insurance Co.,* 519 S.W.2d 703, 704 (Tex.App.—Texarkana 1975, n.w.h.) (affirming judge's finding that where the husband had moved from the marital home some two months prior to the auto accident in which his wife was injured, and both parties intended that the separation be permanent, the wife was not a "resident of the same household" as the insured).

[25]*See, e.g. Sturgis v. Washington,* 414 U.S. 1057, 94 S.Ct. 563, 38 L.Ed.2d 464 (1973) (for purpose of determining in-state "resident" tuition rates, resident is the same as "domicile");

the intended definition of the term "resident." As "resident" is susceptible of more than one sensible meaning for purposes of the Policy, it too is ambiguous.

5. *"Resident of [the insureds'] Household"*

We have now determined that neither "resident" nor "household" is a legal term of art or a term defined in the Policy and that both words are ambiguous under the circumstances of the instant case. As both "resident" and "household" are ambiguous, it follows that the key phrase, "resident of [the insureds'] household" is ambiguous and thus a question of *fact*.

Moreover, as the ultimate outcome of this litigation turns on the meaning ascribed to that key phrase, the parties' intended meaning is *material*. Accordingly, the district court erred in not allowing the jury to determine (1) the parties' intended meaning of "household," "resident," and "resident of [the insureds'] household"; and (2) whether, under the facts and circumstances of this case, the Hallorans—together with Cicciarella—constituted a "household," given that the Hallorans are present in the Brooklyn Dwelling intermittently for a total of some 60 days per year, and that the Hallorans apparently do constitute a "household" (of which Cicciarella clearly is not a member or "resident") in the Houston Dwelling.

III

CONCLUSION

As we conclude that material questions of fact persist as to whether Dr. Halloran is a "resident" of the Brooklyn Dwelling and, if so, whether the Hallorans and Cicciarella constitute a "household" there, we reverse the district court's grant of summary judgment in favor of Amica and remand Cicciarella's contractual claim for uninsured motorist coverage to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.

---

*Weisenburg v. Telepromter Corp.,* 605 S.W.2d 737, 739 (Tex.Civ.App.—Dallas 1980, no writ) (for the purpose of establishing venue in Texas, a second residence away from the domicile must (1) be a fixed place of abode within the possession of the concerned individual; (2) which is occupied or intended to be occupied consistently over a substantial period of time; and (3) which is permanent rather than temporary).