# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

No. 96-60582

_____

FRANCES C. HOPSON,

Plaintiff-Appellant,

v.

QUITMAN COUNTY HOSPITAL and NURSING HOME, INC.

Defendant-Appellee.

Appeal from the United States District Court

for the Northern District of Mississippi

August 18, 1997

Before POLITZ, Chief Judge, KING, Circuit Judge, and FOLSOM,[*] District Judge.

FOLSOM, District Judge:

Frances C. Hopson ("Hopson") sued her former employer, Quitman County Hospital and Nursing Home Inc. ("the hospital"), in the United States District Court for the Northern District of Mississippi alleging that her termination violated the Family and Medical Leave Act ("FMLA" or "the Act"). She also asserted state law claims for violation of the hospital's personnel policies and the public policy of Mississippi . The parties consented to trial before Magistrate Judge Jerry A. Davis. The district court granted summary judgment for the hospital on all of Hopson's claims. Hopson appeals her FMLA claim and hospital policy claim. As we agree with Hopson,

[*] District Judge of the Eastern District of Texas, sitting by designation.

we reverse the summary judgment and remand the case for further proceedings with respect to both claims.

I.

In August of 1989 Quitman County Hospital and Nursing Home hired Frances C. Hopson as a unit coordinator. As a unit coordinator, Hopson was responsible for transcribing doctor's orders, putting the medications on the medication forms, and ordering supplies. The unit coordinators worked alone on a 12 hour shift, 6:00 a.m. to 6:00 p.m. or 6:00 p.m. to 6:00 a.m.

In October 1994, Hopson consulted a doctor because of a red lump on her right breast. Her doctor informed Hopson that the lump and redness was a result of her large breasts. At that time, Hopson was 5'6" tall, weighed 263 pounds, and wore a 46DD bra. In addition to the lump and redness, the size and weight of her breasts caused her severe back pain and skin problems. In January of 1995, Hopson consulted another physician who referred her to Dr. Somprasong Songcharoen. Dr. Songcharoen examined Hopson on January 25, 1995 and recommended that she undergo breasts reduction surgery. After her visit, Dr. Songcharoen wrote a letter to Hopson's health insurance company to determine whether the procedure would be covered.

While she waited for a response from the health insurance company and a firm date for her operation, Hopson made a written request for time off for the surgery. In February of 1995, Hopson received notification that her surgery would be covered by her health insurance policy. Hopson scheduled the operation for May 16, 1995 and on February 18, 1995, Hopson finalized her leave request with the hospital for May 17, 1995 to July 2, 1995. The hospital granted Hopson's request and made arrangements for another employee to fill in for Hopson during this time period.

Although she had been preapproved by her health insurer for the surgery in February, Hopson learned in April that her insurance would no longer cover breast reduction surgery after April 30, 1995. The hospital's executive secretary, Marcella Finkley, told Hopson that her insurance would not cover the surgery if she had it on May 16. Hopson then contacted Dr.

2

Songcharoen, who had not received notice of the change in her policy, to inquire whether her operation could be rescheduled to a date in April so that it might be covered by her health insurance. Hopson was initially told that there were no openings and that a rescheduling of the surgery was not probable. Meanwhile, Hopson asked the Interim Administrator, Dr. Richard Edwin Waller, whether her insurance could cover her surgery in May, since she had been preapproved since February. Dr. Waller responded that her insurance would not cover the surgery in May.

Then, on April 20, 1995, Dr. Songcharoen's office called Hopson and told her that the surgery could be performed by Dr. Shelby K. Brantley, Jr. on April 26, 1995. The following morning on April 21 Hopson asked the Director of Nursing, Patricia Yates, if she could have her leave moved forward. Yates and Waller refused Hopson's request because no one else would be able to cover Hopson's leave upon short notice. The individual scheduled to fill in for Hopson pursuant to her initial requested leave would not be available until May 17, 1995. Moreover, one of the other unit coordinators, Bernice Boyd, was already on leave which left the hospital even more short-handed at this particular position. Hopson was informed that the requested leave could not be moved up on such short notice because the other unit coordinator was out on leave and because the hospital would not be able to find someone sufficiently trained to cover the subsequently requested time off.

Nevertheless, on April 26, 1995 Hopson failed to report to work and, instead, underwent bilateral reduction mammoplasty. She was released from the hospital the following day and returned home. On the same day, her surgeon, Dr. Brantley, faxed a letter to the hospital explaining Hopson's surgery and requesting that she be excused from work beginning April 27, 1995. Hopson's immediate supervisor, Ms. Willie Mae Jones, telephoned Hopson to inform her that she would be fired if she did not come to work on April 29, 1995. Hopson answered that she was recovering from surgery, taking medication, and could not go to work. On April 29, 1995, Hopson called the hospital to say she could not come into work because of her surgery. On May

3

1, Hopson received a certified letter from Ms. Yates informing her that she had been fired, effective April 29, 1995, for taking unapproved leave. Pursuant to written hospital policy set forth in a handbook provided to Hopson when she began employment at the hospital, failure to follow instructions of a superior (insubordination) and two consecutive days absence without notice is cause for termination without prior warning or notice.

On August 11, 1995 Hopson sued the hospital in the Federal District Court for the Northern District of Mississippi claiming her termination was in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, the hospital's own internal policies, and the public policy of the State of Mississippi. The hospital moved for summary judgment, contending that it was entitled to judgment as a matter of law on all of Hopson's claims. The district court granted the hospital's motion for summary judgment on all of Hopson's claims.

In its Memorandum Opinion, the district court began its analysis of Hopson's FMLA claim by observing that the FMLA provides for twelve weeks of unpaid medical leave, but that the employee must give the employer sufficient notice, thirty days at least, if possible, "so as not to disrupt unduly the operations of the employer." 29 U.S.C. § 2612(e)(2). Although 29 C.F.R. § 825.302(b) states one or two days is sufficient notice where it is not possible to give 30 days notice, 29 C.F.R. § 825.302(e) requires the employee "ordinarily" to consult with the employer to work out a time which "best suits the needs of both the employer and the employee." Noting that Hopson's advancement of her procedure was not medically related and certainly not a medical emergency, the district court determined that the hospital was under no duty to waive the 30 day requirement and undertake extraordinary measures to make the requested leave time available to Hopson. While remarking that it was regrettable that the hospital administration could not accommodate this employee, the district court found that a health care provider such as the hospital owes its first priority to its patients, which requires having a full competent staff at the facility at all times . Therefore, the district court concluded, "On a non-emergency medical procedure, it does not seem unreasonable for the hospital to require plaintiff to adhere to her

4

original requested and granted leave time." Accordingly, the district court granted summary judgment for the defendant on Hopson's FMLA claim.

In addition, the court found no merit to Hopson's claim that hospital policy was violated. Pursuant to hospital employee handbook policy, two days' absence was a Category One violation, an abandonment of employment, and grounds for immediate termination. Because she never informed her superiors that she intended to be absent despite their lack of approval, the court rejected Hopson's contention that her absence was not "without notification." Thus, the court granted summary judgment on Hopson's hospital policy claim.[2]

Hopson appealed contending the district court was in error in granting the hospital's motion for summary judgment with respect to (1) Hopson's claim of a violation of FMLA and; (2) Hopson's claim of a violation of the employment handbook under Mississippi law. We review a district court's award of summary judgment under the same standard that the district court applied to determine whether summary judgment was appropriate. *Cicciarella v. Amica Mut. Ins. Co.,* 66 F.3d 764, 767 (5th Cir. 1995). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Therefore, the summary judgment will be affirmed only if we are "convinced, after an independent review of the record, that there is no genuine issue as to any material fact' and that the 'movant is entitled to judgment as a matter of law." *Cicciarella,* F.3d at 767 (quoting *Herrera v. Millsap,* 862 F.2d 1157, 1159 (5th Cir. 1989)).

## II.

A.    FMLA claim

Hopson argues that summary judgment was improperly granted on the FMLA claim because the change in her insurance coverage for the surgery was a "change in circumstances"

---

[2] The district court also found no legal support for a public policy claim. Hopson does not appeal this claim.

5

allowing an employee to give such notice "as is practicable." She contends that whether her request to move her leave forward was reasonable under the circumstances is a dispute that implicates the timing and content of her request and is, thus, a factual question for the jury to decide.

The hospital responds that the FMLA specifically requires sufficient notice by the employee who is required to consult with the employer to work out a time which best suits the needs of both the employer and the employee. In this case, Hopson requested that her leave be moved forward on just a few days notice for reasons which were not medically related but rather were purely pecuniary. As a health care provider, the hospital has the responsibility for maintaining a competent staff so as not to unduly prejudice the safety and health of these patients. Because her absence would leave the hospital without a day shift ward altogether, the hospital denied Hopson's request. In sum, the hospital contends that the FMLA prescribes nothing more than 12 weeks of unpaid leave upon proper notice and that its denial of Hopson's request did not violate any of its obligations under the FMLA.

The FMLA provides eligible employees up to twelve weeks of unpaid leave each year for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Having granted Hopson's initial request for leave, the hospital does not dispute that Hopson's surgery was for a "serious health condition." When the necessity for leave is foreseeable based on planned medical treatment the Act requires that the employee:

> (A) shall make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer, subject to the approval of the health care provider of the employee or the health care provider of the son, daughter, spouse, or parent of the employee, as appropriate; and
> (B) shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph, except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable.

6

29 U.S.C. 2612(e)(2). The final regulations promulgated by the Secretary of Labor[1] provide

further guidance on the requirement of notice under the FMLA.

> If 30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable. For example, an employee's health condition may require leave to commence earlier than anticipated before the birth of a child. Similarly, little opportunity for notice may be given before    placement for adoption...."As soon as practicable" means as soon as both possible and       practical, taking into account all of the facts and circumstances in the individual case. For foreseeable leave where it is not possible to give as much as 30 days notice, "as soon as   practicable" ordinarily would mean at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee.

29 C.F.R. § 825.302(a)-(b). Though reduced notice is available when there has been a change in

circumstances, "[e]mployees are ordinarily expected to consult with their employers prior to the

scheduling of treatment in order to work out a treatment schedule which best suits the needs of

both the employer and the employee." 29 C.F.R. § 825.302(e).

We note that the district court erred in holding as a matter of law that a "change in

circumstances" must be medically related or a medical emergency. Neither the Act nor the

regulations interpreting it require that the date of the treatment be medically required.

Furthermore, the regulations contemplate that 30 days' notice may not be practicable because of

"a lack of knowledge of approximately when leave will be required to begin, a change in

circumstances, *or* a medical emergency." 29 C.F.R. § 825.302(a) (emphasis added).

While acknowledging the FMLA's requirement of notice as amplified by the regulations,

the district court's holding that it was not unreasonable for the hospital to hold Hopson to her

original requested leave subsumed questions of fact better left for the jury. Although it can be

difficult to distinguish between questions of law and questions of fact, in a case where the court is

---

[1] The final regulations issued by the Secretary became effective on April 6, 1995. *See* 60 Fed.Reg. 2181 (Jan. 6, 1995). Because Hopson's termination occurred after that release date, the final regulations govern this dispute.

asked to apply the standards of a relatively recent statute to undisputed facts, it is our opinion that the adequacy of Hopson's notice is a fact issue. In *Manuel v. Westlock Polymers Corp.,* 66 F.3d 758, 764 (5th Cir. 1995), we discussed the content of notice required under the FMLA when leave is unforeseeable. In that case we observed that "[w]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case. The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Id.* Though the present case involves foreseeable leave, the nature of the inquiry into notice will be the same. What constitutes a "change in circumstances," whether a plaintiff's notice is given "as soon as practicable," and whether the employee has made a reasonable effort to schedule her treatment so as not to disrupt unduly the operations of the employer requires an inquiry into the particular facts and circumstances of each case. Such determinations are questions of fact and are better left to the jury with its traditional function of assessing human behavior and expectations. Accordingly, the district court erred in not allowing the jury to determine the fact issues of (1) whether Hopson's change in insurance coverage constituted a "change in circumstances," and if so, (2) whether Hopson gave notice to the hospital as "soon as practicable," and (3) whether Hopson made a reasonable effort to schedule her surgery so as not to disrupt unduly the operations of the hospital.

B.      Hopson's Hospital Policy Claim

Hopson was terminated for insubordination and job abandonment, which are defined under the hospital's personnel policy as Category 1 violations - "Insubordination (intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority). Failure to report to work two days consecutively without notification will be considered job abandonment." The hospital concedes that if Hopson were entitled to take leave under the FMLA, then the hospital would not have been justified under the employee handbook in terminating her. Furthermore, the Court finds that whether Hopson was insubordinate and failed

to report to work without notification under hospital policy are genuine issues of material fact. Therefore, the district court improperly granted summary judgment on Hopson's hospital policy claim.

III.

Accordingly, we reverse the district court's grant of summary judgment in favor of the hospital on Hopson's FMLA and hospital policy claims and remand the case to the district court for a resolution of the aforementioned factual issues.

REVERSED AND REMANDED.