IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-20200
_____

ALPHA/OMEGA INSURANCE SERVICES, INC.,

Plaintiff-Appellant,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-97-CV-3435)
_____

January 12, 2000

Before JOLLY, EMILIO M. GARZA and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Appellant Alpha/Omega Insurance Services, Inc.

("Alpha/Omega") appeals from the district court's grant of

summary judgment to appellee Prudential Insurance Company of

America ("Prudential").  We affirm the summary judgment as to

Alpha/Omega's fraud and misrepresentation claim and vacate the

summary judgment as to Alpha/Omega's conversion and tortious

interference claim.

## I.    Factual and Procedural Background

In July, 1991, Prudential appointed Alpha/Omega as its

_____

   [*]   Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion
should not be published and is not precedent except under the limited
circumstances set forth in 5th Cir. R. 47.5.4.

special agent,[2] thereby authorizing Alpha/Omega to write and sell Prudential's property and casualty insurance.

On December 7, 1995, Prudential gave Alpha/Omega notice that the agency relationship would terminate on December 31, 1995. Alpha/Omega protested: under the Texas Insurance Code, article 21.11-1(1)(a), Prudential owed Alpha/Omega six months notice and payment of renewal commissions until December 31, 1996. In a letter dated December 22, 1995, Prudential relented, acknowledging that it had a "unique relationship" with Alpha/Omega and agreeing to follow Texas law.

In February, 1996, Prudential began contacting Alpha/Omega clients insured by Prudential, notifying them of non-renewal, and offering them replacement policies with other carriers. Alpha/Omega objected to Prudential's conduct, and Prudential agreed to stop soliciting Alpha/Omega's clients.

Alpha/Omega filed suit on June 27, 1997, in Texas state court. Though the original petition stated causes of action for fraud and misrepresentation, conversion and tortious interference with contract, the heart of Alpha/Omega's complaint is that Prudential is stealing Alpha/Omega's book of business.[3] Prudential removed to federal court on grounds of diversity.

---

[2] Alpha/Omega is an "independent insurance agent," which means that it is "not owned or controlled by any insurer or group of insurers and whose agency agreement does not prohibit the representation of other insurers." Alpha/Omega Ins. Servs. Inc. v. Prudential Ins. Co. of America, No. 97-3435, slip op. at 2 n.2 (S.D. Tex. Feb. 1, 1999).

[3] The "book of business" or "expirations" refers to a copy of the policy containing the date of the insurance policy, the name of the insured, the date of its expiration, the amount of insurance, premiums, property covered and the terms of insurance. See id. at 8.

The district court granted summary judgment to Prudential on February 1, 1999.  It held that Alpha/Omega had not introduced facts to support its claim for fraud and misrepresentation, and that Prudential owned the book of business, thus rendering conversion and tortious interference impossible.

Alpha/Omega timely filed this appeal.

## II.    Standard of Review

We apply de novo review to summary judgment motions and evaluate the case under the same standards employed by the district court.  See Shakelford v. Deloitte & Touche, LLP, 190 F.3d 398, 403 (5th Cir. 1999).

The district court should grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c).  "An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  Owsley v. San Antonio Indep. Sch. Dist., 187 F.3d 521, 523 (5th Cir. 1999).  On summary judgment, "we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant[.]"  Rushing v. Kansas City S. Ry. Co., 185 F.3d 496, 505 (5th Cir. 1999).

## III.    Fraud and Misrepresentation

Alpha/Omega claims that Prudential committed fraud and misrepresentation when it led Alpha/Omega to believe that it was

seeking a principal-agent relationship for purposes of distributing its property and casualty insurance products. Rather, Alpha/Omega contends, Prudential planned to use the principal-agent relationship to gather the information necessary to steal Alpha/Omega's clientele. Alpha/Omega maintains that Prudential made misrepresentations when it: (1) failed to disclose that it intended to compete with Alpha/Omega; (2) failed to reveal that it intended to steal Alpha/Omega's book of business; and (3) promised that it would follow industry customs.

Prudential responds that the fraud and misrepresentation claim involved only the claim that Prudential promised to pay renewal commissions through December 31, 1996 and failed to do so. Because Robert Wheeler ("Wheeler"), Alpha/Omega's CEO, conceded that Prudential did in fact make such payments, Prudential argues that no fraud and misrepresentation occurred.

We hold that the district court properly dismissed this claim. Alpha/Omega's complaint identifies only one representation as fraudulent: that Prudential would continue paying renewal commissions through December 31, 1996. Wheeler admits in his deposition that he received renewal commissions up until that date. As Prudential's representation was true, no action for fraud and misrepresentation can lie, and the district court did not err in granting summary judgment for Prudential.

As to Alpha/Omega's contentions about other misrepresentations on Prudential's part, Alpha/Omega cannot raise these additional claims of fraud for the first time on

4

appeal.  See Fed. R. Civ. Proc. 9(b) (requiring claims of fraud to be pled with particularity in the complaint); see also United States ex rel Wallace v. Flintco Inc., 143 F.3d 955, 971 (5th Cir. 1998) (refusing to consider a new argument, raised for the first time on appeal, unless it "presents a pure question of law," or, "if ignored, would result in a miscarriage of justice" or which "meets the plain error standard.").  We therefore affirm the summary judgment as to the fraud and misrepresentation claim.

## IV.    Conversion and Tortious Interference with Contract

Alpha/Omega alleges that Prudential converted Alpha/Omega's book of business and tortiously interfered with Alpha/Omega's contracts with its own clients.

Prudential counters that it owns the book of business and therefore cannot have converted its own property or tortiously interfered with its own contracts.

Because we find that the question of ownership of the book of business is a contested factual issue, we hold that summary adjudication was improper.  The question of ownership turns on the terms set forth in the contract governing the agency relationship.[4]  Here, the parties disagree as to the meaning of

---

[4]    Alpha/Omega argued that the contract in the record pertained merely to life insurance, not property and casualty insurance, policies.  It based its argument on Wheeler's testimony that he thought the written contract pertained only to life insurance.  But the plain language of the contract grants Alpha/Omega authority "[t]o solicit and procure applications for all types of insurance policies."  Without evidence of an oral agreement that the contract at issue applied only to life insurance, Wheeler's misunderstanding of the contract does not create an ambiguity.  See Davis v. Davis, 175 S.W.2d 226, 229 (Tex. 1943); 14 Texas Jurisprudence § 191 (3d ed. 1981).  We therefore proceed with the understanding that the contract does govern the terms of the agency relationship.

5

section 6(g) of the contract, which states, in its relevant part, "All books, accounts . . . records . . . and all other items provided by [Prudential], and relating to or connected with the business of the [Prudential] . . . shall be the property of the [Prudential]."

Alpha/Omega argues that the contractual provision either does not convey the book of business or is ambiguous as to its meaning. Whether a contract is ambiguous in Texas is a question of law. See Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc., 117 F.3d 180, 187 (5th Cir. 1997). Alpha/Omega posits that the clause only applies to those items provided *to* Alpha/Omega *by* Prudential; the book of business is indisputably provided *by* Alpha/Omega *to* Prudential. Whether "provided by [Prudential]" modifies "all books, accounts [and] records" or merely "and all other items" is unclear, as is Prudential's contention that the clause can be read, "books, accounts [and] records . . . relating to or connected with the business of [Prudential]." Thus, the contract is ambiguous, and the parties may introduce additional facts of custom and practice in the industry to guide interpretation of the provision. See Cicciarella v. Amica Mut. Ins. Co., 66 F.3d 764, 768 (5th Cir. 1995) ("Once the document is found to be ambiguous, the determination of the parties' intent through extrinsic evidence is a question of fact."). Because we find the contract provision ambiguous, and inasmuch as Alpha/Omega has submitted evidence that the disputed contractual provision did not convey the book of business to Prudential, a

6

fact issue sufficient to survive summary judgment exists.[5]

Finally, Prudential agreed to comply with Texas Insurance Code, article 21.11-1(1)(a), even though that provision does not apply "where the policies and the insurance business is owned by the company and not the agent." Tex. Ins. Code, art. 21.11-1(3). Prudential's compliance with article 21.11-1(3) evidences its own belief that it did not own Alpha/Omega's book of business on December 22, 1995 when it agreed, by letter, to comply with the terms of the statutory provision, and its own understanding of its ownership of the book of business contributes to the genuine factual dispute that exists. In short, Alpha/Omega proffered sufficient, specific evidence that the contract did not convey the book of business to Prudential to survive summary judgment. We therefore vacate the summary judgment on the conversion and tortious interference claims for further proceedings.

For the foregoing reasons we affirm the summary judgment with respect to the fraud and misrepresentation claim and vacate the summary judgment with respect to the conversion and tortious interference claims.

AFFIRMED IN PART, VACATED IN PART.

---

[5] Prudential argues that the compensation schedule, incorporated by reference in section 3 of the contract, conveys the book of business to it. We reject this argument. While section 3 undoubtedly incorporates by reference a compensation schedule, we have no reason to believe that it incorporated the compensation schedule included in the record, which, on its face, applies to all ordinary agency representations. Alpha/Omega was a special agent.