# JOHN A. VAN OVERBEKE v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

227 N. W. 2d 807.

March 28, 1975—No. 44966.

*Winter, Lundquist, Sherwood & Athens* and *Marvin E. Lundquist,* for appellant.

*Molter & Runchey, Robert C. Runchey,* and *Joseph H. Louwagie,* for respondent.

Heard before Otis, MacLaughlin, and Knutson, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

The issue in this case is whether there was insurance coverage on a 1955 Chevrolet at the time of an accident on April 9, 1973. The trial court held that there was, and we agree.

On April 9, 1973, plaintiff, John A. Van Overbeke, was involved in an accident while driving a 1955 Chevrolet owned by his brother, Thomas Van Overbeke. Thomas had no policy of insurance on the 1955 Chevrolet on the date of the accident. Plain-

tiff, however, did have a policy of insurance in effect on the date of the accident. That insurance policy was with defendant, State Farm Mutual Automobile Insurance Company, and covered a 1969 Camaro owned by plaintiff. The policy included coverage for plaintiff while driving a "non-owned automobile," as defined in the policy. Plaintiff claimed that the 1955 Chevrolet was a "non-owned automobile" under that definition and brought this action asking the trial court to declare that defendant was obligated to provide coverage for the April 1973 accident according to the terms of the insurance policy.

The insurance policy in question obligated defendant to pay, among other things, all sums which the insured became legally obligated to pay as damages because of bodily injury and property damage, and to pay certain medical expenses on behalf of plaintiff and others if they arose out of the ownership or use of the "owned motor vehicle," which in this case was the 1969 Camaro.

The policy further provided that the insurance on the 1969 Camaro would also apply to the use of a "non-owned automobile" by plaintiff. A "non-owned automobile" is defined in the policy as:

"* * * [A]n automobile * * * not

(1) owned by,

(2) registered in the name of, or

(3) furnished or available for the frequent or regular use of the named insured, his spouse, or any relative of either residing in the same household, other than a temporary substitute automobile." (Italics omitted.)

Defendant contends that the 1955 Chevrolet was either (a) owned by a relative of the named insured residing in the same household, or (b) furnished or available for the frequent or regular use of the named insured. Therefore, argues defendant, the 1955 Chevrolet was not a "non-owned automobile" at the time

of the accident and was not covered by the insurance policy in effect on the 1969 Camaro.

The trial court concluded that the 1955 Chevrolet was a non-owned automobile within the meaning of the policy and was, therefore, covered under the terms of the insurance policy on the 1969 Camaro. It based that conclusion on its findings of fact that plaintiff and his brother, Thomas, did not reside in the same household and that the 1955 Chevrolet was not "furnished or available for the frequent or regular use" of plaintiff.

Plaintiff, age 19 at the time of the accident, was born in Marshall, Minnesota, and raised on his parents' nearby farm. In September 1972, plaintiff entered the Mankato Area Vocational Technical Institute. At that time he and a roommate rented an apartment at 408 1/2 Front Street in Mankato in which he lived until the time of the accident. At the beginning of 1973, plaintiff applied for unemployment compensation in Mankato. Thereafter, in February 1973, plaintiff obtained employment in a Mankato factory where he worked 40 hours a week while going to school. While he was in Mankato, plaintiff paid his own rent, bought his own food, and received no support from his parents. Plaintiff testified that he had intended to register to vote in Mankato, but forgot to do so. He also testified that while in school at Mankato he received a duplicate driver's license which showed his address as that of his parents in Marshall, but he stated at the trial that from the time he moved to Mankato up to the time of the accident it was his intention that Mankato be his residence. He also testified that he received mail both at his parents' address, Rural Route 3, Marshall, and at his Mankato address.

Plaintiff had owned a motorcycle and several cars while living on the farm and had insured them with defendant. In April 1972, prior to the time he entered school in Mankato, plaintiff purchased a 1969 Camaro. When plaintiff applied to defendant for insurance on this car, he listed his address as that of his parents. Later, when plaintiff moved to Mankato to begin school, he took

the Camaro with him, and that is the only car he regularly used up until a few weeks before the accident.

On March 25, 1973, approximately two weeks before the accident, plaintiff began driving the 1955 Chevrolet owned by his brother, Thomas, who lived in his parents' home on the farm near Marshall. It is clear from the record that plaintiff began driving the 1955 Chevrolet because Thomas had asked him to take the car back to Mankato for the purpose of removing some lettering from the side of the car, which plaintiff agreed to do at the vocational school in Mankato. For that reason, plaintiff took the 1955 Chevrolet back to Mankato and left the Camaro at his parents' home. During the time plaintiff drove the 1955 Chevrolet, his brother drove the Camaro two or three times. After having the 1955 Chevrolet one week, plaintiff discovered that it would take three weeks to finish the work because he had other duties at school which would take up his time. Plaintiff then returned the car to Marshall and informed Thomas of this fact. Thomas asked plaintiff to take the car back to Mankato so that the work could be completed. Plaintiff did some sanding during the first week he had the car and some sanding and painting during the second week. He intended to finish the work during the third week. During this two-week period plaintiff drove the 1955 Chevrolet to and from school and to and from work; and after spending the weekend of March 31 to April 1, 1973, at his parents' home, he used the Chevrolet to drive his fiancee to Anoka, where she attended school. Plaintiff then drove from Anoka to Mankato on Sunday evening of that weekend.

At the end of the second week, plaintiff was visited at Mankato by his fiancee. On Sunday night and early Monday morning of that weekend, plaintiff drove her from Mankato to Anoka in the 1955 Chevrolet. On the return trip from Anoka to Mankato on April 9, 1973, plaintiff, who was alone in the car, was involved in an accident with another car in which both plaintiff and the driver of the other car were injured.

As a result of the accident, plaintiff was hospitalized for over

one month. While in the hospital, he asked his mother to go to his apartment in Mankato and pick up his belongings. From the time he was discharged from the hospital until he again moved to an apartment in Mankato upon returning to school in the fall, plaintiff used his parents' home as his address. While he was in the hospital, plaintiff was interviewed by defendant's agent and signed several documents relating to his claim. At that time he gave his parents' address, Rural Route 3, Marshall, as his address.

There was further testimony at trial by plaintiff, his fiancee, and his mother to the effect that plaintiff intended his home to be Mankato and that he and his fiancee intended to live in Mankato after they were married.

■ The first issue is whether, at the time of the accident, plaintiff's brother, Thomas, resided with plaintiff in the same household so that Thomas' car was not a "non-owned automobile" under the definition of the policy and therefore was not covered by the insurance policy on the 1969 Camaro.

For the purpose of the resolution of this issue, it is undisputed that Thomas resided in his parents' home at the time of the accident. Defendant argues that plaintiff also was a resident in his parents' home at that time because, among other things, the policy of insurance states that plaintiff's address is Rural Route 3, Marshall, his parents' mailing address; plaintiff indicated to defendant while in the hospital that his address was Rural Route 3; and the 1969 Camaro was at the home of plaintiff's parents at the time the accident occurred.

The definition section of the policy provides:

"Resident or Reside—when used with reference to the named insured's household, means bodily presence in such household and an intention to continue to dwell therein. However, the named insured's unmarried and unemancipated children, while away from his household attending school, are deemed to be residents of his household."

The trial court found that "on April 9, 1973 the plaintiff was 19 years of age, was single, was emancipated, and was residing at 808 North 5th St., Mankato, Minnesota."

We have defined "household" for insurance purposes as generally synonymous with "family" and as including those who dwell together as a family under the same roof. Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. 2d 855 (1953) ; Bartholet v. Berkness, 291 Minn. 123, 189 N. W. 2d 410 (1971). The determination of a person's household is to be made according to the facts of each case. Bartholet v. Berkness, *supra*. There is ample evidence to support the trial court's finding that plaintiff was emancipated and residing in Mankato at the time of the accident. He had rented an apartment in Mankato, provided for all of his own financial needs with no assistance from his parents, was employed in Mankato as well as attending school, and intended Mankato to be his residence. The fact that he continued to use the address of his parents from time to time, while a factor for consideration, does not refute the trial court's finding. It is common for young, single persons to continue to use their parents' address for some purposes, such as a permanent mailing address. The fact that plaintiff at times used his parents' address does not preclude a finding that he resided in Mankato at the time of the accident. In our judgment, the facts amply support the finding that plaintiff and his brother, Thomas, did not reside in the same household at the time of the accident.

■ Defendant claims the 1955 Chevrolet was "furnished or available for the frequent or regular use" of plaintiff and thus, under the policy's definition, was not a nonowned automobile and was not covered by the insurance policy on the Camaro. Defendant places great emphasis on Boedigheimer v. Taylor, 287 Minn. 323, 178 N. W. 2d 610 (1970). In that case, which involved an insurance contract provision identical to the one in this case, the question was whether a certain automobile was furnished for the frequent or regular use of the insured. We stated that the phrase "furnished or available for * * * frequent or regular

use" was unambiguous and that the trial court correctly instructed the jury that those words were to be given their common and ordinary meaning in order to determine the factual issue involved.

In Boedigheimer, the insured was allowed to drive a 1960 Studebaker owned by his father-in-law while his father-in-law was hospitalized. On the day of the accident the insured was driving his father-in-law's car because the insured's wife was using the car which was covered by the insurance policy. There was testimony that the insured had permission from his father-in-law to use the car whenever he wanted or needed it but that he would have to ask permission of his mother-in-law in order to obtain the key. Under those facts the jury, in answer to a special interrogatory, found that the 1960 Studebaker owned by the father-in-law was furnished for the frequent or regular use of the insured. Based upon that answer, judgment was entered for the insurance company and an appeal followed. In affirming, we said (287 Minn. 328, 178 N. W. 2d 613):

"The evidence is adequate to support the verdict rendered in this case. The purpose of an exclusionary clause of the type here involved is to prevent coverage of two or more automobiles when only a single automobile is insured. This being so, consideration is to be given to the agreement by which the owner of the insured automobile was permitted to use the non-owned automobile, as well as his actual use thereof. The evidence presented was adequate to support a finding that the Lark automobile was 'furnished or available' for [the insured's] 'regular or frequent use,' and the verdict must stand."

The trial court in the instant case found that the 1955 Chevrolet was not furnished for the frequent or regular use of the insured. As established in Boedigheimer, the resolution of this question is ordinarily to be determined by the finder of fact, and the trial court's determination in this case should not be reversed upon appeal unless clearly erroneous. Rule 52.01, Rules of Civil

Procedure. Boedigheimer also establishes that in resolving this question reference should be made to both the agreement between the insured and the owner of the involved automobile and to the actual use of that automobile. In this case the agreement between the two brothers contemplated that the uninsured automobile would be used only for a limited time for the sole benefit of the owner of the vehicle, whereas in Boedigheimer the vehicle could be used for an indefinite time with the main beneficiary being the owner of the insured car since he was provided with an additional car for himself when his wife used the insured automobile.

The trial court, in a comprehensive memorandum, supported its finding on this point as follows:

"* * * The facts established that the vehicle was made available to the plaintiff by his brother for *one* specific purpose and only on an isolated occasion. The specific purpose was so that the plaintiff could perform certain repair work on the body of the car. Incidental to that sole objective plaintiff drove the automobile to Mankato and had it available for use around Mankato, but such use was only as a convenience so that it would be available for the repair work when it could be accomplished. Circumstances which were beyond the control of the plaintiff and which were not contemplated extended the period of use for which it was available to plaintiff, but at no time was plaintiff's use of the vehicle for any other purpose than to accomplish the repair. There was nothing inconsistent to that use in plaintiff's driving the vehicle to visit his fiancee. It would have been unreasonable and highly impractical to have required that plaintiff drive the 1955 Chevrolet to his parent's home and to then use his own Camaro to drive to Anoka to see his fiancee and then to reverse the sequence so as to have the 1955 Chevrolet available again in Mankato for repair, and to conclude that unless plaintiff did so the use of the 1955 Chevrolet was subject to the exclusionary provision of the policy under a 'frequent or regular' determination. Defendant takes the position that plaintiff's use of the vehicle

on March 25 through 30th, April 2 through 9th, supports the conclusion that such use was 'frequent or regular'. It is the position of the Court that the only reason it was being used at all by plaintiff was for the limited purpose of having the vehicle repaired and that such objective, which was contemplated to have been completed in a period within one week's time, negated a conclusion that the vehicle was available for 'frequent or regular' use as that phrase was intended to be interpreted under the terms of the policy.

"* * * [T]he Court is of the opinion that the coverage of the use of the non-owned automobile by plaintiff is clearly provided in the policy for which the premium was paid."

Our review of the evidence leads us to the conclusion that the trial court's findings of fact are supported by the evidence and that it correctly denied defendant's motion for a new trial.

Affirmed.