**MILBANK INSURANCE COMPANY,**
**Appellant,**

v.

**Janene R. JOHNSON, as Special Administrator of the Estate of Nicole Chapeau, Decedent, Defendant,**

**Mary COLUMBUS as Trustee for the Heirs and next-of-kin of Ricky Wildey, Decedent, Kelly Lyn Klocek and Angela Nahl, Respondents,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
**Intervenor.**

**No. CX–95–2035.**

Court of Appeals of Minnesota.

Feb. 27, 1996.

Michael S. Kreidler, Leo I. Brisbois, Stich, Angell, Kreidler, Brownson & Ballou, P.A., Minneapolis, for appellant Milbank Ins. Co.

Sharon L. VanDyck, Schwebel, Goetz, Sieben & Moskal, P.A., Minneapolis, for respondent Columbus.

Harry A. Sieben, Jr., Sieben, Grose, Vonholtum, McCoy & Carey, Ltd., Minneapolis, for respondent Klocek.

Gregory S. Malush, Milavetz & Associates, Brooklyn Center, for respondent Nahl.

Emilio R. Giuliani, Labore & Giuliani, Hopkins, for intervenor State Farm Mut. Auto. Ins. Co.

Considered and decided by PARKER, P.J., and DAVIES and MANSUR*, JJ.

## OPINION

DAVIES, Judge.

In this declaratory judgment action, appellant insurance company challenges trial court's denial of a motion for amended findings and conclusions, arguing that coverage on a non-owned vehicle was excluded under the policy because the vehicle was "furnished or available for [the driver's] regular use." We affirm.

## FACTS

In May 1993, 17–year–old Nicole Chapeau, while driving her friend Corrina Lende's vehicle, collided with another car and was killed. Chapeau's passenger was also killed, and two occupants of the other car were injured. Those three persons (the deceased being represented by a trustee) brought suit against Chapeau's estate.

Chapeau had purchased insurance for the vehicle from Viking Insurance Company (Viking). Viking has deposited the policy limits ($60,000) with the trial court. The claimants have, however, also sought to access an automobile insurance policy issued to Chapeau's father by appellant Milbank Insurance Company (Milbank). That policy provided $300,-000 of coverage to all relatives residing in the father's household.

Milbank brought this declaratory judgment action against Chapeau's estate and the claimants (respondents) [1] seeking to establish that its policy did not cover the Lende vehicle because it was "furnished or available for Chapeau's regular use" and thus was subject to an exclusion under the policy.[2]

The case was tried to the court, which found as a matter of fact that Chapeau was a resident of her father's household at the time of the accident and that the Lende vehicle was not furnished or available for her regular use.[3] Thus, the trial court held that the Milbank policy provided coverage for liability in excess of the Viking policy limits. The trial court denied Milbank's motion for amended findings and conclusions. This appeal followed.

Lende and Chapeau had been friends for seven or eight years. A few months prior to the accident, Lende moved to North Dakota and purchased a car. Two or three weeks before the accident, Lende drove the car to the Twin Cities for a short visit, during which she was the only person who drove it. About a week before the accident she returned to North Dakota, but left the car with Chapeau temporarily. Lende planned to pick the car up two weeks later. She gave Chapeau permission to use the car during those two weeks, provided Chapeau insured the car for that period. Chapeau did so (through Viking).

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 10.

1. State Farm Insurance Company, the underinsured motorist insurer for one of the claimants, Kelly Klocek, has intervened in this action pursuant to stipulation and court order, and is thus an additional named respondent.

2. The "regular use" exclusion reads as follows: We do not provide Liability Coverage for the ownership, maintenance, or use of:

\* \* \*

3. Any vehicle, other than "your covered auto," which is:

\* \* \*

b. *furnished or available for the regular use of any "family member."*
(Emphasis added.)

3. Milbank also claimed at trial that Chapeau was not a resident of her father's household. That claim has been dropped on appeal.

There is a dispute over what restrictions Lende placed on Chapeau's use of the car. In a recorded statement taken two months after the accident, Lende said:

[Chapeau] had permission to drive the car to and from school and to daycare as long as she insured it and that was it. She took it out of her boundaries * * *.

When confronted at trial with this statement and questioned further about her agreement with Chapeau, Lende responded:

I left [the car for Chapeau's use] and the main reason because she didn't have transportation for her daycare and school and so forth. But it was never really spoken to her restricted anywhere where she could drive it. If she wanted to go shopping or see a movie or whatever, that was fine.

* * *

There was no actual restrictions made between the two of us. It sounds that way I'm sure. At that point in time [the time of the pretrial statement] people called constantly asking ten thousand questions.

* * *

I just figured Nicole's knowledge, with her having just gotten a driver's license recently, she wouldn't drive the vehicle where she did, being unfamiliar with those kind of conditions on roads, being in an unfamiliar surrounding, drive that car. I just figured she naturally knew that. Obviously not, but that's what happened.

* * *

It [any further restriction on use of the car] was never spoken. I just figured she naturally knew. So, no, it was never really spoken.

During the week before the accident, Chapeau used the vehicle every day to drive her son to daycare and to go to her high school classes. She also used the car during some of the evenings, presumably on personal business. The accident occurred about one week into Chapeau's use of the car, on her way back to the Twin Cities after an evening in Glencoe.

## ISSUE

Was the trial court finding that the car was not furnished or available for Chapeau's regular use clearly erroneous?

## ANALYSIS

■ Without providing support, Milbank asserts that this is a mixed question of fact and law. The question whether a non-owned vehicle is furnished or available for the regular use of the insured is, however, primarily one of fact. *Leegaard v. Universal Underwriters Ins.*, 255 N.W.2d 819, 821 (Minn. 1977); *Van Overbeke v. State Farm Mut. Auto. Ins.*, 303 Minn. 387, 393, 227 N.W.2d 807, 811 (Minn.1975). Indeed, in *Leegaard*, discussing "regular use" exclusion cases, our supreme court emphasized that, the trial courts' had invariably been affirmed although the results varied. 255 N.W.2d at 821.

■ This court reviews a trial court's factual findings under the "clearly erroneous" standard, giving "due regard" to the trial judge's evaluation of witness credibility. Minn.R.Civ.P. 52.01. We will not reverse a finding of fact unless it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Northern States Power v. Lyon Food Prods.*, 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975).

■ We have considered exclusion clauses very similar to the one here and found their terms unambiguous. *See, e.g., LeDoux v. Iowa Nat'l Mut. Ins.*, 262 N.W.2d 418, 421 (Minn.1978) ("furnished or available for the regular use" not ambiguous); *Van Overbeke*, 303 Minn. at 392–93, 227 N.W.2d at 810 ("furnished or available for the frequent or regular use" not ambiguous). The words, therefore, are to be given their "natural and ordinary meaning taken in their popular sense * * *." *Boedigheimer v. Taylor*, 287 Minn. 323, 327, 178 N.W.2d 610, 613 (Minn. 1970).

■ Three factors must be considered in determining whether the use of a non-owned vehicle was "regular" for purposes of an insurance exclusion: (1) the agreement between the owner and driver concerning the use of the vehicle; (2) the actual use to which

the vehicle was put; and (3) the purpose for including non-owned vehicle provisions in insurance policies. *Grinnell Mut. Reinsurance v. Anderson*, 427 N.W.2d 274, 276 (Minn.App.1988) (citing *Boedigheimer*, 287 Minn. at 327–29, 178 N.W.2d at 613–14).

With respect to the agreement between Lende and Chapeau, it is evident that Lende never expressly restricted the use of the car. The trial court properly considered the entire context of the situation, however, including Lende's belief about how the car would be used. The vehicle was to be used only for a limited time (two weeks), and the evidence indicates that the overriding purpose of the loan was to relieve the transportation problems Chapeau faced as a teenaged mother. The evidence of her actual use of the car demonstrates that she used it during the day for the needs contemplated by Lende and only sometimes used it for personal business. The totality of evidence supports finding that the car was loaned to Chapeau on a temporary and limited basis to help her with essential transportation.

This court has discussed the purpose of this type of exclusion in an insurance contract:

> Nonowned automobile provisions in automobile liability insurance contracts were not intended to permit insureds to drive any number of additional vehicles and claim coverage for all of them. Rather, the provisions were inserted into the liability policies for the convenience of the insureds.

*Id.* at 276.

We believe that the two-week loan of the Lende vehicle is precisely the type of temporary-use situation the Milbank policy is intended to cover. The facts of this case are not unlike those in *Leegaard*, where the car at issue was a repair shop loaner. 255 N.W.2d at 820–21. In that case, our supreme court stated:

> The trial court rested its finding primarily on the fact that Leegaard had the [loaner car] for a short period of time. There are other facts tending to indicate frequent or regular use, such as the apparently unrestricted character of the use. However,

they are not sufficient to render the trial judge's findings clearly erroneous. * * * A [loan] period of 2 weeks raises greater doubt as to the applicability of the exclusion [than a few days would], but the question remains one for the trier of fact.

*Id.* at 821–22.

In this case, we similarly defer to the trial court's factual findings The court acted within its discretion in concluding that the Lende vehicle was, as contemplated by the exclusion clause, not available for Chapeau's regular use and that the father's Milbank policy thus provides excess liability coverage for the accident.

## DECISION

It was not clearly erroneous for the trial court to find that the Lende vehicle was not "furnished or available for [Chapeau's] regular use." Therefore, Milbank's policy exclusion does not bar coverage for liability from the accident in excess of the Viking policy coverage.

**Affirmed.**