# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3325

_____

Shirley R. Adzick,

        Appellee,

v.

UNUM Life Insurance Company
of America,

        Appellant.

*
*
*
*
*   Appeal from the United States
*   District Court for the District
*   of Minnesota.
*
*
*
*

_____

Submitted: May 16, 2003

Filed: December 16, 2003

_____

Before SMITH and HANSEN, Circuit Judges, and READE,[1] District Judge.

_____

SMITH, Circuit Judge.

      UNUM Life Insurance Company of America ("UNUM") appeals the district court's denial of its motions for new trial and expanded findings of fact in Shirley Adzick's action to recover long-term disability insurance benefits. The district court denied the motions after concluding that UNUM's policy contained ambiguous material terms and Adzick did not fraudulently report her income. We reverse.

_____

[1] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, sitting by designation.

II. *Facts*

Adzick purchased a long-term disability insurance policy from UNUM in February 1993 when she worked as a dentist for Pentagon Dental Group. UNUM's application process required Adzick to answer a series of eligibility questions on the application form. Adzick, the UNUM insurance agent, and Adzick's employer, Michael Perpich, D.D.S., completed the form together. Adzick reviewed the completed application for accuracy before she signed it.

UNUM issued the policy, effective February 28, 1993, to Adzick. The policy provided that "[e]xcept for fraudulent misstatements, we will not contest those statements made by you in the application for a coverage provided under this policy after that coverage has been in effect for two years during your lifetime."[2]

Over four years later on March 10, 1997, Adzick filed a claim for long-term disability benefits. Adzick claimed she became unable to work on January 23, 1997, because she "had no confidence in [her] ability to perform" the duties associated with her practice. Adzick's physician diagnosed Adzick primarily as having cocaine dependency. After submitting her application, Adzick admitted herself for treatment at a drug-treatment clinic.[3]

---

[2] UNUM's insurance application provided that the completed application is incorporated into the insurance contract between UNUM and its insured.

[3] Prior to UNUM's receipt of the claim form, Adzick entered a one-week drug-treatment Professional Assessment Program at Abbott Northwestern Hospital spurred by a disciplinary referral to the Minnesota Board of Dentistry. Following completion of the assessment program in February 1997, Adzick entered the Talbott-Marsh Treatment Center in Georgia for chemical-dependency treatment. Beginning in June 1997, Adzick was treated by Sheila Specker, M.D. On September 9, 1997, Adzick underwent a neuropsychological exam, administered by Deborah D. Roman, Psy.D. During each of these periods, Adzick reported similar histories of cocaine usage over approximately twenty years beginning in 1978, occurring on an intermittent basis until approximately 1992 or 1993, when her usage increased to several times a week

During its investigation of Adzick's claim, UNUM requested copies of Adzick's federal income tax returns. Adzick's returns indicated that she made $17,125 in 1991 and $17,600 in 1992, but that she claimed a loss in 1993. In addition, Adzick's 1992 divorce decree indicated that she earned $1,000 per month as an employee of Pentagon Dental Group.

On June 16, 1997, UNUM rescinded the policy and denied Adzick's claim for benefits. UNUM claimed that Adzick fraudulently misrepresented both her income and cocaine use in the application. Adzick appealed this decision pursuant to the plan's terms, but UNUM affirmed the denial. Adzick filed this lawsuit.

The district court ruled in Adzick's favor after a bench trial in January 2000. The district court found that the application term "regularly used"[4] was ambiguous and construed it against UNUM. The court also concluded that UNUM failed to establish that Adzick "regularly used" cocaine during the five years preceding submission of the application. Furthermore, the district court found that UNUM failed to establish that Adzick fraudulently misrepresented her income. UNUM moved for amended findings or, in the alternative, for a new trial on these issues and on the issue that the application term "currently use" precluded coverage. The district court denied these motions, and UNUM appealed.

---

and then to everyday.

[4] The application contained the following question:

Other than already mentioned in this Application, have you in the past five years:

***

(c) regularly used, or do you currently use, cocaine . . . .

Adzick answered "no" to this inquiry. The application did not define the terms "regularly" or "currently."

When considering whether to grant or deny a motion for new trial, a district court must consider whether the verdict is against the weight of the evidence and if allowing it to stand would result in a miscarriage of justice. *In re Air Crash at Little Rock, Arkansas, on June 1, 1999*, 291 F.3d 503, 509 (8th Cir. 2002). A district court's denial of a motion for new trial is reviewed for abuse of discretion. *Id.* at 508–09 (citing *Van Steenburgh v. Rival Co.*, 171 F.3d 1155, 1160 (8th Cir. 1999)). "In reviewing the district court's decision, we give great deference to its judgment, because the district court has the benefit of hearing testimony and observing the demeanor of witnesses throughout the trial." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 932 (8th Cir. 2001) (citing *Sanford v. Crittenden Memorial Hospital*, 141 F.3d 882, 884 (8th Cir. 1998)).

III. *Analysis*[5]

Minnesota courts recognize that Minnesota Statutes § 62A governs disability insurance.[6] *See Kersten v. Minnesota Mut. Life Ins. Co.*, 608 N.W.2d 869, 873 (Minn. 2000) (noting that Minnesota Statutes § 62A regulates "various health and disability policies"). Section 62A.06(3) provides:

> The falsity of any statement in the application for any policy covered by sections 62A.01 to 62A.09 hereof [accident and health insurance], may

---

[5] UNUM raised two issues on appeal. Because we reverse the district court's decision on the first issue regarding the ambiguity of the contract language and the falsity of Adzick's answers thereto, we need not address UNUM's second point on appeal regarding the falsity of Adzick's responses to the income questions.

[6] Federal jurisdiction in this case is based on diversity. Thus, Minnesota's substantive law applies. *Larsen v. Mayo Medical Center*, 218 F.3d 863, 866 (8th Cir. 2000).

not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.

Because Adzick's policy is more than two years old, UNUM must also prove fraud in addition to materiality. Minn. Stat. § 62A.04(2); *Independent Sch. Dist. No. 197 v. Accident and Casualty Ins.*, 525 N.W.2d 600, 606 (Minn. Ct. App. 1995); *Useldinger v. Old Republic Life Ins. Co.*, 377 N.W.2d 32, 35 (Minn. Ct. App. 1985). Where the insured had full knowledge of the concealed facts, an inference that the insured was willfully false or intentionally misleading arises as a matter of law. *See Ellis v. Great-West Life Assurance Co.*, 43 F.3d 382, 387 (8th Cir. 1994). "A willfully false and intentionally misleading answer is one which is consciously made with a premeditated design so as to falsify facts so as to lead the insurer to act when he otherwise would not" and "[w]illfully false denotes knowingly concealed." *Siemers v. United Benefit Life Ins. Co.*, 75 N.W.2d 605, 608 (Minn. 1956).

As noted, the application contained the following question:

Other than already mentioned in this Application, have you in the past five years:
*** 
(c) regularly used, or do you currently use, cocaine . . . .

Adzick answered "no" to this inquiry. The application did not define the terms "regularly" or "currently." Adzick indicated at trial that she defined the word "regularly" to mean "every day."

Second, UNUM sought income information as reported on Adzick's federal income tax returns. Adzick's written answer indicated that she earned $30,000 each year in 1991 and 1992 after she began working at Pentagon Dental in 1990, and that she anticipated earning $35,000 in 1993. At trial, Adzick testified that she did not

know how much income she had earned at the time she provided the answers, but that Perpich volunteered the information concerning her current and projected income.

### 1. *Contract Ambiguity*

UNUM first argues that the terms "regularly used" and "currently use" are not ambiguous. UNUM asserts that the evidence supports a finding that Adzick regularly used cocaine within the five years prior to submitting the application and currently used cocaine at the time she submitted the application. The district court determined that both phrases were ambiguous and read them against the drafter, UNUM. We disagree.

We review a district court's interpretation of the contractual provisions of an insurance policy de novo as a question of law. *See Noran Neurological Clinic, P.A. v. The Travelers Indem. Co.*, 229 F.3d 707, 709 (8th Cir. 2000) (applying Minnesota law); *Koch Eng'g Co. v. Gibralter Cas. Co.*, 78 F.3d 1291, 1294 (8th Cir. 1996). "In interpreting insurance contracts, we must ascertain and give effect to the intentions of the parties as reflected in the terms of the insuring contract." *Jenoff, Inc. v. New Hampshire Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997); *Minnesota Mining & Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175, 179 (Minn. 1990) (citing *Dairyland Ins. Co. v. Implement Dealers Ins. Co.*, 199 N.W.2d 806, 811 (1972)).

If an ambiguity in the language of an insurance contract exists, then the court is obliged to construe the ambiguity against the insurer, and in favor of the insured. *Noran Neurological Clinic*, 229 F.3d at 708; *American Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire and Cas. Co.*, 551 N.W.2d 224, 227 (Minn. 1996). The language of an insurance policy, however, is ambiguous only if it can reasonably be given more than one meaning. *American Commerce Ins. Brokers, Inc.*, 551 N.W.2d at 227; *General Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 153 (Minn. App. 2001); *Lhotka v. Illinois Farmers Ins. Co.*, 572 N.W.2d 772, 773 (Minn. App. 1998). "However, a court has no right to read an ambiguity into the plain language of a

policy in order to provide coverage." *Farkas v. Hartford Accident & Indem. Co.*, 173 N.W.2d 21, 24 (1969) (citations omitted). In undertaking such an assessment, the court must fastidiously guard against any invitation to "create ambiguities" where there are none. *Noran Neurological Clinic*, 229 F.3d at 708. "Minnesota courts have been quite clear that the initial existence of a contractual ambiguity does not 'ineluctably lead to the conclusion that the drafter is to lose.'" *Piper Jaffray Cos. v. National Union Fire Ins. Co.*, 967 F.Supp. 1148, 1154 (D. Minn. 1997) (quoting *Davis by Davis v. Outboard Marine Corp.*, 415 N.W.2d 719, 724 (Minn. App. 1987)); *see also, Sphere Drake Insurance PLC v. Trisko*, 24 F.Supp.2d 985, 991 (D. Minn. 1998).

Because UNUM's insurance contract and application do not define "regularly used" or "currently use," we must give these terms their plain, ordinary, or popular meaning. *Smith*, 353 N.W.2d at 132. "Regular use," particularly in relation to drug use, is defined as "a habitual or common practice." BLACK'S LAW DICTIONARY 1541 (7th ed. 1999). Webster's Dictionary defines "regular" as "orderly" and "methodical," and defines "regularly" as "in a regular manner," "on a regular basis," or "at regular intervals." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1913 (3d ed. 1993). In addition, "current" is defined as "presently elapsing," "occurring in or existing at the present time," or "most recent." *Id.* at 557. Given their plain meaning, these terms are not ambiguous in the context of this case.

Although Adzick testified that she believed that "regularly used" meant "daily use," there is no support for that interpretation. Case law indicates that the courts have generally determined that terms such as "regularly used" or "current" are unambiguous in the context of an insurance policy. Minnesota courts have concluded that the term "regular use" and others like it are unambiguous in the context of automobile insurance policies. *Le Doux v. Iowa Nat'l Mut. Ins.*, 262 N.W.2d 418 (Minn. 1978) (the term "furnished for regular use" was unambiguous in automobile policy); *Van Overbeke v. State Farm Mutual Automobile Ins. Co.*, 227 N.W.2d 807

(Minn. 1975) (same); *Boedigheimer v. Taylor*, 178 N.W.2d 610 (Minn. 1970) (same); *Milbank Ins. Co. v. Johnson*, 544 N.W.2d 56 (Minn. Ct. App. 1996) (same) (citing *Le Doux*, *Van Overbeke*, and *Boedigheimer*). *See also*, *Kern v. Liberty Mut. Ins. Co.*, 398 F.2d 958 (8th Cir. 1968) (interpreting Missouri law) (meaning of term "regular use" in automobile policy depends upon the circumstances of each case). Other jurisdictions, as well, have found the term "regular use" to be unambiguous in the context of automobile policies. *See, e.g.*, *American Family Ins. Group v. Hemenway*, 575 N.W.2d 143 (Neb. 1998). *But see*, *Moss v. Mid-America Fire and Marine Ins. Co.*, 647 P.2d 754 (Idaho 1982) (meaning of "regular use" is a question of fact at summary-judgment stage of proceedings).

More specifically, the term "regularly used, or is currently using" illegal drugs has been found to be unambiguous in the context of a claim for life insurance proceeds. *Johnson v. Prudential Ins. Co. of America*, 589 F.Supp. 30 (D.C. 1983), *aff'd without opinion*, 744 F.2d 878 (D.C. Cir. 1984). In *Johnson*, the insurer denied life-insurance benefits to the decedent-insured's spouse upon learning that the decedent smoked marijuana at various times before and after applying for and becoming insured under the life-insurance policy. In particular, the insurer denied the request for benefits by claiming that the decedent falsely answered the material question of whether he "regularly used, or is currently using . . ." various illegal drugs including marijuana. The plaintiff sued, claiming in part that the terms "regularly use" and "currently using" were ambiguous. The district court, however, determined that the question was unambiguous and that the decedent understood the question.

*Johnson* is clearly analogous to this case. Here, too, the insurance application asks whether Adzick "regularly used, or is currently using . . ." cocaine or other illegal drugs. Given the plain meaning of the terms, there could be no reasonable confusion as to the meaning of the terms. Adzick's assertion that she believed that "regularly used" meant "daily use" is unreasonable when viewed under the common definition of the term. In addition, Adzick's assertion offers no explanation for her

denial to the question regarding whether she "currently use[d]" illegal drugs when she applied for coverage. Therefore, the district court erred in determining that this phrase is ambiguous in this case.

## 2. *False Statement*

Because we find that the terms "regularly used" and "currently use" are unambiguous in this case, we must next determine whether Adzick provided a false answer to allow UNUM to avoid the contract.[7] Rule 52(a) of the Federal Rules of Civil Procedure mandates that in cases tried to the court, findings of fact shall not be set aside unless clearly erroneous. *Washington v. Simpson*, 806 F.2d 192, 195 (8th Cir. 1986). This standard of review does not permit us to substitute our own impressions for those of the district court. *Horner v. Mary Institute*, 613 F.2d 706, 713 (8th Cir. 1980). When findings are based on determinations regarding the credibility of witnesses, Rule 52 demands even greater deference to the trial court's findings, and unless contradicted by extrinsic evidence or internally inconsistent, such findings can virtually never be clear error. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564 (1985); *Wilson v. Lambert*, 789 F.2d 656, 658 (8th Cir. 1986).

The strongest evidence of the frequency of Adzick's cocaine use arises from Adzick's medical records produced after she submitted her claim for benefits in 1997. These records indicate that Adzick herself reported to numerous doctors, therapists, the Minnesota Board of Dentistry, and her expert witness, Carl Malmquist, M.D., a twenty-year history of cocaine use that became a problem sometime between 1991 and 1993, except during her pregnancies.[8]

---

[7] At trial, the parties stipulated to the materiality of the drug-use and income questions. As such, we need not address this issue here.

[8] Three of Adzick's pregnancies resulted in successful deliveries on February 11, 1981; August 11, 1987; and August 10, 1995. Adzick also contended that she was pregnant for a time in 1983, 1984, 1985, 1989, 1992, and 1993; however, those

Adzick's treatment records indicate that she reported that her cocaine use was "continuous," except during her pregnancies, during the twenty years prior to treatment. In June 1997, Adzick described her cocaine use to Dr. Specker as "intermittent" until 1991 or 1992 when her usage "developed into a substantial problem for her." In September 1997, Adzick told the neuropsychologist, Dr. Roman, that her "use was occasional until 1991 or 1992 when she began using on a more frequent basis, generally a couple of times per week." During the litigation, Adzick told Dr. Malmquist that she used cocaine five to six times a year from 1985 through 1990, that her use increased over the next eighteen months, and finally that in 1992 her cocaine use increased further.

Adzick, however, asserted that she did not regularly use cocaine until October 1995 and that her behavior between 1988 and 1993 provides no indication that she was a chronic user. Adzick presented evidence from witnesses who claimed that they did not witness any behavioral problems indicative of chronic cocaine use. However, these witnesses included people who worked with Adzick and saw her only in her office or other work settings. This is consistent with Adzick's statements to her counselors that she did not use cocaine at work. Adzick was able to conceal her cocaine use as evidenced by the fact that she admittedly began using cocaine nearly every day beginning in October 1995, but was able to conceal this behavior until she was reported to the Minnesota Board of Dentistry in December 1997.

The district court discounted the numerous treatment records that included Adzick's own statements regarding the history of her cocaine use and addiction. The court apparently determined that the records were of little value because they were created years after the period at issue. However, these records–created by doctors and counselors reporting and recording Adzick's own statements–consistently point to a history of "regular" use particularly beginning in 1991 and 1992 when she reported

pregnancies did not go to term.

that she began using cocaine at least two times a week. In contrast, the decedent in the *Johnson* case reportedly only smoked marijuana approximately once a month, which the court determined was sufficient to qualify as "regular" or "current" use. In addition, the district court credited the testimony of Adzick's various witnesses who testified that she did not appear to be under the influence of cocaine during the period in question. However, following the district court's reasoning, these recollections, too, occurred years after the events in question, and would, pursuant to the district court's analysis, render the testimony of little value.

After reviewing the entire record, we find that the district court clearly erred in determining that Adzick did not regularly use or was not currently using cocaine during the relevant period. Adzick's negative response on the insurance application constitutes a false answer to a material matter at issue in this case. As such, we find that the district court abused its discretion in denying UNUM's motion for new trial and clearly erred in denying UNUM's motion to amend the court's findings of fact. We reverse.

_____