*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0048**

North Star Mutual Insurance Company,
as Subrogee of Jacob Quernemoen,
Appellant,

vs.

State Farm Mutual Automobile Insurance Company,
Respondent.

**Filed August 11, 2014
Affirmed
Johnson, Judge**

Ramsey County District Court
File No. 62-CV-13-5279

Jeannie Provo-Petersen, Daniel J. Stahley, Provo-Peterson & Associates, P.A., Lake Elmo, Minnesota (for appellant)

Karen Cote, David M. Werwie & Associates, St. Paul, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

North Star Mutual Insurance Company paid no-fault benefits to Jacob Quernemoen, who was injured in an automobile accident. In this subrogation matter,

North Star seeks to recover from State Farm Mutual Automobile Insurance Company the amount of the benefits paid on the grounds that State Farm also had an obligation to pay benefits and that State Farm's obligation is higher in priority. The district court granted State Farm's motion for summary judgment. We affirm.

## FACTS

On October 1, 2011, Quernemoen was injured in an automobile accident. He was a passenger in a vehicle driven by a friend, Jordan Henrichs. Quernemoen incurred medical expenses of $15,179.50.

In October 2011, Quernemoen sought no-fault benefits from both North Star and State Farm. North Star insured Henrich's vehicle. State Farm insured Quernemoen's vehicle, which was not involved in the accident, pursuant to a policy issued to Quernemoen's parents. State Farm denied Quernemoen's claim on the ground that Quernemoen was not an "insured" but, rather, merely a "driver" on the policy that was issued to his parents. North Star tendered Quernemoen's claim to State Farm on the ground that State Farm has a higher-priority obligation to pay the claim. State Farm denied North Star's tender. North Star paid Quernemoen's medical bills.

In September 2012, North Star commenced this action against State Farm, seeking a money judgment for the value of the no-fault benefits paid to Quernemoen. In July 2013, North Star brought a motion for a declaratory judgment to establish that State Farm has a higher-priority obligation to pay the benefits. In August 2013, State Farm brought a motion for summary judgment.

The parties' motions required the district court to determine whether Quernemoen was a resident of his parents' household at the time of the accident. The undisputed facts relevant to that issue are as follows.

In the spring of 2007, Quernemoen was 15 years old and was living with his parents in the city of Carver. He was having some difficulties at school. With the approval of his parents, he moved to the home of an aunt and uncle in the city of Elbow Lake to attend a high school there. Quernemoen's sister moved into his former bedroom at their parents' home. Quernemoen visited his parents' home on some weekends and during breaks from school.

In March 2009, when Quernemoen was 18, his grandfather bought him a car, a Chevrolet Cobalt. Quernemoen's parents obtained insurance coverage for the vehicle on their auto-insurance policy. Quernemoen's father informed their insurance agent that the Cobalt belonged to Quernemoen and that Quernemoen would be the person driving it on a regular basis. State Farm's records reflect that Quernemoen is a "driver," not an insured, and State Farm rated the policy accordingly. The record is unclear as to whose name was on the title to the Cobalt.

After Quernemoen graduated from high school in the spring of 2010, he stayed at his parents' home "for a while" and then moved back to his aunt's and uncle's home. He started a job and began attending college as a part-time student in September 2010. He continued to live with his aunt and uncle until December 2010, when he rented an apartment of his own in the city of Elbow Lake. Quernemoen moved most of his belongings out of his parents' home when he moved into his apartment. Quernemoen

assumed responsibility for paying insurance premiums on his car at that time. Quernemoen's parents paid his rent for approximately four or five months but stopped doing so when Quernemoen dropped out of college in approximately February 2011. At that time, his parents began forwarding him any bills that were sent to him at his parents' address.

In the spring of 2011, Quernemoen began working full-time for a contractor in Elbow Lake. His parents did not expect him to return to their home, though they were somewhat unsure because of the seasonal nature of his job. During the summer and fall of 2011, Quernemoen's parents provided him with some financial assistance by helping him pay for automobile insurance, medical insurance, and other living expenses, when necessary.

In November 2013, the district court denied North Star's motion, granted State Farm's motion, and entered summary judgment in favor of State Farm. North Star appeals.

## D E C I S I O N

A district court must grant a motion for summary judgment if the evidence demonstrates "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the non-moving party. *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008). This court applies a *de novo* standard of review to the district court's legal

conclusions on summary judgment and views the evidence in the light most favorable to the non-moving party. *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 6 (Minn. 2012).

## I.  Resident-Relative Status

North Star argues that the district court erred by concluding that State Farm is not obligated to provide coverage for Quernemoen's injuries because Quernemoen was not a resident of his parents' household at the time of the accident.

North Star's subrogation claim is based on the Minnesota No-Fault Automobile Insurance Act, which allows a no-fault insurance carrier that has paid a claim to recover from another no-fault carrier that has a higher-priority obligation to pay the claim. *See* Minn. Stat. § 65B.47, subd. 6 (2012).  The act specifies the order of priority of multiple obligations:

> (a)  The security for payment of basic economic loss benefits applicable to injury to an insured is the security under which the injured person is an insured.
>
> (b)  The security for payment of basic economic loss benefits applicable to injury to the driver or other occupant of an involved motor vehicle who is not an insured is the security covering that vehicle.
>
> (c)  The security for payment of basic economic loss benefits applicable to injury to a person not otherwise covered who is not the driver or other occupant of an involved motor vehicle is the security covering any involved motor vehicle. An unoccupied parked vehicle is not an involved motor vehicle unless it was parked so as to cause unreasonable risk of injury.

*Id.*, subd. 4.  In this case, the parties agree that North Star is obligated to pay benefits pursuant to paragraph (b).  North Star seeks to establish that State Farm has an obligation

5

to pay benefits pursuant to paragraph (a), which would have priority over North Star's obligation. State Farm contends that it has no obligation to pay benefits to Quernemoen.

To resolve the parties' dispute, we must analyze and interpret the insurance policy that State Farm issued to Quernemoen's parents. *See Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 46 (Minn. 2008). In doing so, we apply general principles of contract interpretation. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998). We give the language used in the policy its "natural and ordinary meaning." *American Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001). If a contract is "clear and unambiguous," a court "should not rewrite, modify, or limit its effect by a strained construction." *Valspar Refinish, Inc.*, v. *Gaylord's, Inc.*, 764 N.W.2d 359, 364-65 (Minn. 2009). "Whether a contract is ambiguous is a question of law," which we review *de novo*. *Carlson*, 749 N.W.2d at 45.

The auto-insurance policy that State Farm issued to Quernemoen's parents provides that State Farm will provide coverage for certain medical expenses arising from "bodily injury to an insured, caused by accident resulting from the maintenance or use of a motor vehicle as a vehicle." The policy defines the term "insured" to mean:

1. you [*i.e.*, a named insured];

2. resident relatives; and

3. any other person when:

   a. occupying your car, a newly acquired car or a temporary substitute car; or

   b. not a driver or occupant of another motor vehicle, if the bodily injury occurs in Minnesota and results

6

> from the maintenance or use of your car, a newly acquired car
> or a temporary substitute car.

In this case, the declarations page of the policy identifies only Quernemoen's parents as the named insureds.

North Star contends that Quernemoen was an "insured" under the second clause of the definition of that term, which extends coverage to "resident relatives." The policy defines the term "resident relative" to mean, with respect to an adult, "a person other than you who is . . . related to you by blood, marriage or adoption who resides with you." The policy further defines the concept of "resident" as follows: "A person resides in the same household with you if that person's home is usually in the same family unit, even though temporarily living elsewhere." This part of the State Farm policy conforms to the statutory definition of a resident relative: "A person resides in the same household with the named insured if that person's home is usually in the same family unit, even though temporarily living elsewhere." *See* Minn. Stat. § 65B.43, subd. 5 (2012).

The parties have referred to a body of caselaw concerning whether a minor or young adult is a resident relative of a policyholder's household. The most prominent cases are three opinions of the supreme court, two of which reached the conclusion that a young person was not a resident for purposes of resident-relative coverage. In *Fruchtman v. State Farm Mutual Automobile Ins. Co.*, 274 Minn. 54, 142 N.W.2d 299 (1966), a woman was a passenger while her 27-year-old son was driving his own vehicle. *Id.* at 55, 57, 142 N.W.2d at 300-01. The son, who was on leave between military assignments, had moved out of his mother's home two and one-half years earlier, had not

visited the home for more than a week or two, and did not intend to return, even though he kept most of his belongings there. *Id.* at 56-57, 142 N.W.2d at 301. The supreme court concluded that the woman and her son did not reside in the same household. *Id.* at 57-58, 142 N.W.2d at 300-01. Similarly, in *Van Overbeke v. State Farm Mut. Auto. Ins. Co.*, 303 Minn. 387, 227 N.W.2d 807 (1975), the injured person was 19 years old, was employed, was providing for his own financial needs with no assistance from others, attended post-secondary school in Mankato, and intended for Mankato to be his residence. *Id.* at 391-92, 227 N.W.2d at 809-10. The supreme court concluded that he was not a resident relative of his older brother's household. *Id.*

In *Firemen's Ins. Co. of Newark, New Jersey v. Viktora*, 318 N.W.2d 704 (Minn. 1982), however, the supreme court concluded that the injured person was a resident relative. *Id.* at 707. The injured person was a 23-year-old man who had been employed in a different city but moved into his parents' home during a strike that suspended his employment indefinitely. *Id.* at 705, 707. He had lived with his parents for nearly four months at the time of the accident. *Id..* He did not pay his parents for room or board, and his mother regularly did his laundry. *Id.* at 705. The supreme court reasoned that the young man "was not self-supporting while at his parents' home" and that he and his parents "enjoyed the intimate, informal family relationship indicative of a legal residency." *Id.*

The parties also cite a series of opinions issued by this court after the enactment of the statutory definition of resident relative. *See* 1974 Minn. Laws ch. 408, § 3, at 764 (codified at Minn. Stat. § 65B.43, subd. 5). Those cases typically consider multiple

factors, such as (1) the age of the injured person, (2) whether the person had established a separate residence, (3) whether the person was self-sufficient, (4) the frequency and duration of the person's presence at the policyholder's home, and (5) whether the person intended to return to the family home. *See, e.g.*, *Wood v. Mutual Serv. Cas. Ins. Co.*, 415 N.W.2d 748, 750 (Minn. App. 1987), *review denied* (Minn. Feb. 12, 1988).

The undisputed facts of this case are substantially similar to the facts in the supreme court's opinions in *Fruchtman* and *Van Overbeke*. In each of those cases, a young adult had moved out of his childhood home, had established his own home, was entirely or mostly self-sufficient financially, and had no intention of returning to the childhood home. *See Van Overbeke*, 303 Minn. at 391-92, 227 N.W.2d at 809-10; *Fruchtman*, 274 Minn. at 57-58, 142 N.W.2d at 300-01; *see also French v. State Farm Mut. Auto. Ins. Co.*, 372 N.W.2d 839, 843 (Minn. App. 1985) (relying on *Fruchtman* and *Van Overbeke* to conclude that young adult was not resident of parents' home because he had moved out, was self-supporting, and had no intention to return). In addition, the multi-factor test adopted by this court leads to the conclusion that Quernemoen is not a resident relative. First, Quernemoen was 20 years old at the time of the accident, which means that he was an emancipated adult. Second, Quernemoen had moved out of his parents' home approximately four years before the accident and had established his own residence approximately 10 months before the accident. Third, Quernemoen had discontinued his education and had obtained full-time employment, and he was mostly independent financially. Fourth, Quernemoen made only short visits to his parents' home, except for the period immediately following his high school graduation, which was

9

more than one year before the accident. Fifth, Quernemoen had no intention of living at his parents' home again in the future.

The undisputed facts of this case are dissimilar to the facts of *Viktora* because the young man in that case was living with his parents day-after-day, was completely dependent financially on his parents, and had no definite plans to leave his parents' home. *See* 318 N.W.2d at 707. In addition, the undisputed facts of this case are distinguishable from the cases cited by North Star, in which young adults had not yet settled down and established their own residences because they were students or in military service. *See Schoer v. West Bend Mut. Ins. Co.*, 473 N.W.2d 73, 77 (Minn. App. 1991); *Wood*, 415 N.W.2d at 750; *Skarsten v. Dairyland Ins. Co.*, 381 N.W.2d 16, 18-20 (Minn. App. 1986), *review denied* (Minn. Mar. 27, 1986); *Morgan v. Illinois Farmers Ins. Co.*, 392 N.W.2d 37, 40 (Minn. App. 1986), *review denied* (Minn. Oct. 22, 1986).

Thus, we conclude that Quernemoen was not a resident of his parents' household at the time of the accident and, thus, was not an "insured" under the State Farm policy. Accordingly, State Farm does not have an obligation to pay no-fault benefits to him.

## II. Alternative Theories

North Star also argues that the district court erred by rejecting three alternative arguments that North Star asserted in an attempt to overcome the terms of the insurance policy. We note State Farm's responsive argument that North Star failed to plead these claims in its complaint. We also question whether the alternative theories may be asserted by an insurer against another insurer in a subrogation action rather than by an

individual seeking coverage from an insurer. But we need not address those issues because we conclude that North Star's alternative arguments fail on the merits.

## A. Reasonable-Expectations Doctrine

North Star argues that the district court erred by rejecting its argument that State Farm should be obligated to pay no-fault benefits to Quernemoen pursuant to the reasonable-expectations doctrine. *See Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 1276-77 (Minn. 1985). The supreme court has limited the reasonable-expectations doctrine to cases in which an insurance policy is ambiguous and in which application of the doctrine is necessary to correct an "extreme situation[]." *Carlson*, 749 N.W.2d at 49; *see also Atwater Creamery*, 366 N.W.2d at 279 (Simonett, J., concurring specially) (reasoning, with three other justices, that ambiguous policy is prerequisite).

North Star contends that the State Farm policy is ambiguous because it does not define the term "driver." A definition of that term is unnecessary because the State Farm policy does not provide coverage based on such a designation. The policy states that it provides coverage to an "insured," and the policy defines that term to include a "resident relative," and the policy further defines the term "resident relative." These policy provisions are similar to language in other policies that have been deemed unambiguous. *See Viktora*, 318 N.W.2d at 706; *Skarsten*, 381 N.W.2d at 19. For the same reasons, the State Farm policy's definition of "resident relative" is unambiguous. Thus, the reasonable-expectations doctrine does not apply.

11

**B.      Illusory-Coverage Doctrine**

North Star argues that the district court erred by rejecting its argument that State Farm should be obligated to pay no-fault benefits to Quernemoen pursuant to the illusory-coverage doctrine.

The doctrine of illusory coverage derives from the supreme court's observation that "'insurance contracts should, if possible, be construed so as not to be a delusion to those who have bought them.'" *Jostens, Inc. v. Northfield Ins. Co.*, 527 N.W.2d 116, 118 (Minn. App. 1995) (quoting *Motor Vehicle Cas. Co. v. Smith*, 247 Minn. 151, 157, 76 N.W.2d 486, 490-91 (1956), *review denied* (Minn. Apr. 27, 1995)). The doctrine is similar to the reasonable-expectations doctrine in that it seeks "to avoid an unreasonable result when a literal reading of a policy unfairly denies coverage." *See id.* The doctrine of illusory coverage "is best applied . . . where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *Id.* at 119.

North Star argues that the State Farm policy provides illusory coverage because Quernemoen's parents paid a premium for no-fault coverage yet the policy did not provide coverage for Quernemoen. State Farm responds by arguing that no-fault coverage for Quernemoen potentially was available, depending on various facts, such as whether he was an occupant of a vehicle covered by the policy. Specifically, the State Farm policy provides coverage if either of Quernemoen's parents is involved in an accident, if a resident relative is involved in an accident, if any person is involved in an accident while an occupant of the Cobalt, or if any person other than an occupant is

injured by operation of the Cobalt. Under the policy, Quernemoen could receive no-fault benefits in any of these circumstances, but none of them are present in this case. Accordingly, this is not a case in which no-fault coverage was "nonexistent." *See id.* Thus, the illusory-coverage doctrine does not apply in this case.

## C. Reformation

North Star contends that the district court erred by rejecting its argument that the State Farm policy should be reformed to provide coverage to Quernemoen based on an alleged mutual mistake.

The doctrine of reformation allows a district court to alter or amend a written agreement to reflect the parties' true intentions at the time they entered into the agreement. *SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 864 (Minn. 2011); *Jablonski v. Mutual Serv. Cas. Ins. Co.*, 408 N.W.2d 854, 857 (Minn. 1987). "[R]eformation of a written agreement is available when parties reached an agreement, attempted to reduce it to writing, but failed to express [the agreement] correctly in the writing." *SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 779 N.W.2d 865, 870 (Minn. App. 2010), *aff'd*, 795 N.W.2d 855 (Minn. 2011). To prevail, a plaintiff seeking reformation must prove the following elements of the claim:

> (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

13

*Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980). The plaintiff must prove each element of a reformation claim "by evidence which is clear and consistent, unequivocal and convincing." *Id.* The doctrine of reformation may be applied to an insurance policy to provide coverage that is not available under the terms of the policy. *See Peterson v. Marlowe*, 264 N.W.2d 133, 135 (Minn. 1977); *Wood Goods Galore, Inc. v. Reinsurance Ass'n of Minn.*, 478 N.W.2d 205, 208-09 (Minn. App. 1991), *review denied* (Minn. Jan. 30, 1992).

North Star's reformation argument fails because North Star has presented no evidence that the insurance policy "failed to express the real intentions of the parties" to the policy, *i.e.*, State Farm and Quernemoen's parents. *See Nichols*, 294 N.W.2d at 734. State Farm denies that it intended anything other than what is reflected in the language of the policy, and North Star has not presented any evidence to contradict State Farm's denial. Thus, North Star cannot, as a matter of law, prevail on its reformation claim.

## III. Interest

North Star argues that it is entitled to interest at the rate of 15% on any money judgment entered against State Farm. *See* Minn. Stat. § 65B.54, subd. 2 (2012). North Star raised this issue in the district court, but the district court did not address it because the district court granted summary judgment to State Farm. Likewise, because we are affirming the district court's grant of summary judgment to State Farm, we do not reach the issue. Unless and until North Star obtains a judgment against State Farm, North Star's request for interest is not ripe.

**Affirmed.**

14